**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

# PLAINTIFF'S AMENDED CIVIL RIGHTS COMPLAINT (ABRIDGED SECOND REVISION)

Case CIV No. 3:24-CV-00851 Document TBD Filed August 14, 2024 Page 1 of 41 Page ID #: 1

Mark Wozar
(Plaintiff)

v.

Officer Christopher Campbell
(official and individual capacities)
Officer Jeffrey Swank
(official and individual capacities)
Defendant Madore
(official and individual capacities)
Mark Darby
(official and individual capacities)
Teresa Santiago
(official and individual capacities)
Tyneese Selby
(official and individual capacities)
West Hartford Police Department
Town of West Hartford
United States Post Office
(Defendants)

Civil Action Number: 3:24-CV-00851
Judge Vernon D. Oliver (VDO)
Judge Robert A. Richardson (RAR)

AUG 14 2024 AM8:43
FILED-USDC-CT-HARTFORD

AMENDED COMPLAINT
(ABRIDGED SECOND REVISION)

## AMENDED COMPLAINT (ABRIDGED SECOND REVISION)

This complaint brought pursuant to 42 United States Code (U.S.C.) Section(s) (§) 1983 and/or 1985 (3) and/or 1986, and/or 18 U.S.C. § 241 (Conspiracy Against Rights), and/or 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law), and/or UNDER 18 U.S.C. 1519, and/or the First Amendment, and/or Fourth Amendment, and/or Fourteenth Amendment the to the United States Constitution, arises out of the defendant's commission of federal constitutional violations committed against the plaintiff from and in Hartford County, Connecticut beginning on or about January 19, 2024 and continuing through about May 1, 2024:

1. Not maintaining evidence on seven separate occasions in West Hartford, Hartford County, Connecticut, within the Hartford District of Connecticut. Hartford County, Connecticut falls

within the jurisdiction of the United States District Court for the District of Connecticut

2. Denial to petition to redress grievousness on the Plaintiff, based, in part, for retaliation[1], beginning on or about January 19, 2024 and continuing through about 1 May 2024 in various locations that included West Hartford, Hartford County, Connecticut, within the Hartford District of Connecticut. Hartford County, Connecticut falls within the jurisdiction of the United States District Court for the District of Connecticut.
3. Denial of First Amendment protection of the public's right of access to information about their officials' public activities on the Plaintiff, based, in part, as retaliation, on or about February 15, 2024 in West Hartford, Hartford County, Connecticut, within the Hartford District of Connecticut. Hartford County, Connecticut falls within the jurisdiction of the United States District Court for the District of Connecticut and/or the Fourth Amendment to the United States Constitution, arises out of the Defendants'
4. Commission of an unreasonable search and seizure on the Plaintiff, based, in part, as retaliation, on or about February 15, 2024 in West Hartford, Hartford County, Connecticut, within the Hartford District of Connecticut. Hartford County, Connecticut falls within the jurisdiction of the United States and/or the Fourteenth Amendment to the United States Constitution.
5. Plaintiff's denial of movement guaranteed under the Privileges or Immunities Clause is Amendment XIV, Section 1, Clause 2 via an issuance of an trespass notice which is

1 The Supreme Court has defined retaliation as an intentional act in response to a protected action. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005) Citing *Jackson*, the court in *Gutierrez* underscored the intentional nature of a retaliation complaint: "Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment." *Gutierrez*, 2005 WL 2346956, at *5. The complained of matter need not be a complaint; it can be any lawful conduct that an individual engages in connected with a protected right. "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter." *Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 514 (1958).

was a conspiratorial goal on the Plaintiff, based, in part, as retaliation, on or about February 15, 2024 in West Hartford, Hartford County, Connecticut, within the Hartford District of Connecticut. Hartford County, Connecticut falls within the jurisdiction of the United States District Court for the District of Connecticut.

6. Defendants had a "meeting of the minds" via an "issuance of a trespass notice" which is was a conspiratorial goal on the Plaintiff, based, in part, as retaliation, on or about February 9 and/or 15, 2024 in West Hartford, Hartford County, Connecticut, within the Hartford District of Connecticut. Hartford County, Connecticut falls within the jurisdiction of the United States District Court for the District of Connecticut.

7. Two or more defendants on multiple occasions in the state of Connecticut conspired with the intention/purpose of depriving, either directly or indirectly, any person or class, in this case the plaintiff equal protection of the laws, or of equal privileges and immunities under the United States laws and/or First, Fourth, and/or Fourteenth Amendment Constitutional Amendments.

8. An unknown number of persons from more than one department as shown by video evidence had knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title (paragraph 7 above), are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed and failed to act and are liable to the plaintiff, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in this action.

## JURISDICTION

The United States District Court has subject matter jurisdiction over this dispute because the plaintiff's claims arise under the law of the United States; this Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

Venue is proper in the District of Connecticut because all of the events giving rise to the plaintiff's claims transpired within it. 28 U.S.C. § 1391(b)(2).

## PARTIES

1. The Plaintiff, Mark Wozar, was at all times relevant hereto a resident of West Hartford, Hartford County, Connecticut, within the Hartford District of Connecticut.
2. Defendant Officer Campbell is and was at all times relevant hereto, employed by the West Hartford Police's Department, and assigned to Patrol Division. Christopher Campbell R in 2022 was employed at Town of West Hartford. He is named in his individual and his official capacity.
3. Defendant Officer Swank is and was at all times relevant hereto, employed by the West Hartford Police's Department, and assigned to Patrol Division. Jeffrey Swank A in 2022 was employed at Town of West Hartford. He is named in his individual and official capacity.
4. Defendant Defendant Tracy Madore is and was at all times relevant hereto, employed by the United States Postal Service (USPS). She is named in her individual and official capacity.
5. Defendant Mark Darby was at all times relevant hereto, employed by USPS. He is named in his individual and official capacity.
6. Defendant Teresa Santiago is and was at all times relevant hereto, employed by USPS. She is named in her individual and official capacity.

7. Defendant Tyneese Selby is and was at all times relevant hereto, employed by USPS. He is named in his individual and official capacity.

8. Defendant United States Post Office, located at 12 Crossroads Plaza, West Hartford, Connecticut, in accordance with 39 U.S. Code§ 409 - Suits by and against the Postal Service (d) (l)(A) and (B) is named.

9. Defendant Town of West Hartford is a municipality within the meaning of Conn. Gen. Stat. § 7-467 and a subdivision of the State of Connecticut is named,

10. Defendant West Hartford Police Department of West Hartford is a Municipal employer within the meaning of Conn. Gen. Stat. § 7-467 and a subdivision of the State of Connecticut is named.

## FACTS

11. The West Hartford Police Department (WHPD) "has failed to adopt and/or enforce policies that prevent," selective enforcement and that this failure led to the constitutional violations in this case, making the WHPD liable under§ 1983.

12. The Town of West Hartford "has failed to adopt and/or enforce policies that prevent," selective enforcement and that this failure led to the constitutional violations in this case, making the Town liable under§ 1983.

13. The United States Post Office "has failed to adopt and/or enforce policies that prevent," selective enforcement and that this failure led to the constitutional violations in this case, making the United States liable under§ 1983.

14. Despite multiple written requests to the United States Post Office, the West Hartford Police Department, and Department of Homeland Security no documentation of cooperation of

extraterritoriality between Department of Homeland Security Department and the West Harford Police and/or United States Post Office, in accordance with 40 U.S. Code § 1315 - Law enforcement authority of Secretary of Homeland Security, for protection of 12 Crossroads Plaza allowing the West Hartford Police Department to share jurisdiction has been shown.

15. Despite written request for the a waiver for Title 18 Section 930 of the United States Code by the West Hartford Police Department, no such waiver has been provided.

***For Second Circuit Purposes, the Right to Record Police Is Clearly Foreshadowed***

> The Second Circuit has recognized a right as clearly established where the decisions of other circuits form a "robust consensus of persuasive authority." Higginbotham v. City of New York, 105 F. Supp. 3d 369,380 (S.D.N.Y. 2015). **The Second Circuit has explained that, even if the circuit has not explicitly held a governmental official's conduct to be unconstitutional, "the course of conduct will nonetheless be treated as clearly established if decisions by this or other courts clearly foreshadow a particular ruling on the issue."** Scott v. Fischer, 616 F. 3d 100, 105 (2d Cir. 2010) (quoting Varrone v. Bilotti, 123 F.3d 75, 79 (2d Cir. 1997)). **Further, "clearly established," for purposes of qualified immunity, "does not require a case on point concerning the exact permutation of facts that state actors confront in order to establish a clear standard for their behavior."** Hancock v. Cnty. of Rensselaer, 882 F.3d 58, 69 (2d Cir. 2018). (emphasis added)
>
> **Connecticut state law has forbidden Defendants from "interfer[ing] with any person taking a ... video image of such peace officer ... acting in the performance of such peace officer's duties."** (emphasis added.) Conn. Gen. Stat. Ann. § 52-571j(b). Against the backdrop of the well-settled First Amendment right to observe and to receive publicly available information, the circuit consensus, and a culture where "civilian recording of police officers is ubiquitous," Fields, 862 F.3d at 355, Defendants' qualified immunity argument has a more basic problem: **When a right is obvious, qualified immunity fails**.(Emphasis added.) Simon v. City of New York, 893 F.3d 83, 97 (2d Cir. 2018) ( denying qualified immunity because of the "obvious" nature of Fourth Amendment violation). **As other circuit courts vindicating the right to record police have held, the "nature of the First Amendment's protections in this area" are**

**"virtually self-evident," Glik, 655 F.3d at 85, and thus provide Defendants no cover.** (emphasis added.)

## Case Specific Data

16. Plaintiff was the object of a warrantless/"speedy" arrest and has had his ability for freedom of movement negatively impacted by an order of trespass because of the feelings of postal workers who “don't want him here” and WHPD officers who "hate" him.

**Friday, 19 January, 2024**

17. At approximately 4:07 PM EST Defendant Santiago called the West Hartford's 9-1-1 Emergency line to report a "troublemaker" who was filming her in publicly accessible areas "without asking or nothing". WHPD officers were dispatched for a non-emergency non-jurisdictional non descriptive charge of a “prowler” for doing a protected activity.

18. West Hartford Police Department dispatched Officers Bowsky, Swank, and Bobrowiecki, and Sergeant Caless to investigate an incident outside of their jurisdiction for a non-existent crime as Connecticut does not a have a prowler statue. No record shows WHPD notified USPS.

19. Report #2400002960-00004360 contains factual errors. One of which is found on page 1, last line, which reads, in part, “Officer Bowsky relayed to me Teresa asked Mark to leave due to her feeling” and then continues on page 2 “uncomfortable being recorded.”

20. Officer Swank threatened Plaintiff, Mark Wozar; if he did not “ID”, he would “go to jail.”

- Defendant Swank: “I don't know if you are thinking that it is secondary to the fact that we are here for something else, but the bottom line is we are here to investigate something else and your involved and your the person she said she wanted to leave and you would not leave and you would not leave so by law we have to the right to **ask you for ID and you do not have the right to refuse it! You can be put in handcuffs and go to jail! I don't know why that's so hard for you to believe!**” (emphasis added)

- Plaintiff: "Because if I...by your..."
- Defendant Swank (over Plaintiff): "**Do you want me to take you to jail?**" (emphasis added)

21. Officer Swank's continual recording revealed: Sergeant Caless's "hatred" for the defendant and his "hatred" for Constitutionally protected activities calling them "so annoying!" and encourages if not condones Officer Swank's total disregard for the Constitution by admitting to manufacturing evidence and goal of the multi-department conspiracy.

- Sgt Caless: "I **hated that dude!"**
- Sgt Caless: "I **hate these guys!** They're so annoying."
- Ofer Swank: "Well ... sniff, .. he's [Plaintiff] like officer why are you putting words in my mouth .. .laughing ... l **said something ... .I'm** like do you have your ID on you? He's mouthing me; the people across the clerk. ... he [Plaintiff] said, 'I'd not have to provide my ID to you'"
- Sgt Caless: "Oh, sh*t?!"

1. Officer Bowsky relays that Sergeant Caless knows the law allows plaintiff to record in public and will not allow plaintiff's freedom of movement to be infringed with a trespass order but Officer Bowsky seemingly inadvertently laid out the WHPD's plan/blueprint to deny rights by way of"disturbance". Officer Bowsky: "Yeah, so um, Caless was saying we can't trespass him unless he was causing a disturbance."
2. Defendant Selby, a managing USPS employee, wanted to have evidence deleted and Sergeant Caless, Officer Swank, and Officer Bowsky do not wish uphold the integrity of evidence and legal proceedings to ensure justice is served.
3. Defendant Selby, after conspiring with Defendant Santiago, does not understand the law regarding filming in public nor public officials performing their duties nor do officers correct him asking to destroy evidence in a potential administrative matter nor a trial.

- Mr. Selby: "He's [Plaintiff] video taping her. [Defendant Santiago] Last week we had a minor misconstrue-thing and I had to defuse that. I asked him to delete that. Now he's video taping her .. .1 asked him plenty of times to delete it...I **don't want her feel to threatened by this** guy!"

22. Shelby's state-of-mind and incorrect law understanding: Defendant Selby: "You can't videotape a federal employee ... how may times do I have to tell you that?" Plaintiff: "First of all, you never told me that"

23. Shelby's state-of-mind and incorrect law understanding

- Defendant Selby: "Don't videotape my employee again please"
- Defendant Selby: “You have to understand this is a federal building; you can't come in and video tape employees”
- Defendant Selby: "Can you delete that right now? Delete it right now. Take out your phone and delete it right now."

24. But for Defendant Santiago's call that started the chain-of-events that ultimately infringed upon the Plaintiffs Constitutional rights would not have been started.

**Friday, 9 February 2024**

25. At approximately 10:20, AM EST, Defendants Darby and Madore confronted Plaintiff as he was walking in a parking lot; during the interaction, the Defendants were physically and verbally intimidating.

  - Defendant Madore: "That's fine. Please don't video tape me. He's just walking and video taping me! I **don't care that** I **am in public"**
  - Plaintiff: "You are in public; you are in public; you are in public; you have no expectation of privacy"
  - Defendant Darby: in snarky tone: "OK. .. have a good day sir"
  - Plaintiff: "Thank you sir."
  - Defendant Darby: "Keep going"

- Plaintiff: "Sir, I do not appreciate your tone sir"
- Defendant Darby: "I don't appreciate your tone; you just keep going"
- Defendant Madore: "I'm not doing it! He [Plaintiff] already tried to get in Todd's office, somehow! He's videotaping me because I am going to call on you he's harassing me! So please leave me alone, thank you. Have a good day."
- Plaintiff: "Please do whatever you want to do madam"

26. At approximately 10:20, AM EST, Defendants Darby and Madore confronted Plaintiff as he was being serviced in the post office at 12 Crossroads Plaza; during the interaction, the Defendant Darby was physically and verbally intimidating: "Why are you doing this? Tracy! Tell Tracy to call the authorities! 'Cause this is something we don't need. Out here harassing people."

27. At approximately 10:34, AM, EST, Defendant Campbell arrived on scene and expressed his disdain for First Amendment champions; Defendant Campbell's remark, the Plaintiff he is"trying to get a rise out of people!"

28. At approximately 10:35, AM, EST, Defendants Campbell, Madore, the unnamed Newington supervisor, and Darby continue their "meeting of the minds"; Defendant Campbell's remark, "I'm very used to people coming up with a phone and go like this; it's just part of it, right" and Defendant Madore's remark. "Yeah" is quickly countered by Defendant Campbell's response, "He's in a public place." At approximately 10:36, AM, EST, Defendants Campbell, Madore, the unnamed Newington supervisor, and Darby continue their "meeting of the minds"; Defendant Campbell's remark, "He's within reason going to be doing things that are not illegal."

29. At approximately 10:36, AM, EST, Defendants Campbell, Madore, the unnamed Newington supervisor, and Darby continue their "meeting of the minds"; Defendants' dialog, which

confirms that Plaintiff stayed in publicly accessible areas and Defendant Darby answers most knowledgeably about public spaces; Defendant Madore's incompetence displays:

- Defendant Campbell: "Hear me out with what I am trying to say first. Did he go into any spot that is clearly marked that is not accessible to the public; that's something where an average citizen couldn't just walk-up and go into and have it be something where there is a sign like no trespassing past this point? Is there anything like that?"
- Defendant Madore: "I don't know"
- Defendant Darby: "No"
- Defendant Madore: "Do we have anything like that?"
- Defendant Darby: "No"

30. At approximately 10:37, AM, EST, Defendants Campbell, Madore, the unnamed Newington supervisor, and Darby expand their "meeting of the minds" to include more USPS employees; Defendants' dialog turns to denying Plaintiff's Constitutional rights because of how they feel:

- Unknown mail letter carrier (male) 2: "So we have a right to make like a restraining order for that guy to not come into the post office."
- Unknown mail letter carrier (male) 2, shaking his pointed hand in a deliberate manner: **"YES!"**
- Unknown mail letter carrier (male) 2: "Because **we feel treated,** you know by that guy!"
- Defendant Madore: "Threatened you mean"
- Unknown mail letter carrier (male) 2: "Yeah exactly! So I don't feel comfortable with that guy coming over here"
- Defendant Campbell: "When he walks up to you and did he when had his [inaudible] did he say anything to you? When he he"
- Defendant Mador, interrupting: "He did when he talked to one of my employees"

Defendants' dialog turns to denying Plaintiff's Constitutional rights because of how they, postal employees, feel:

- Unknown mail letter carrier (male) 2: "I'm sorry; I'm [inaudible]; I'm the supervisor at the other office "
- Defendant Campbell: "Yeah"
- Unknown mail letter carrier (male) 2: "We had this situation before."
- Defendant Campbell: "OK"

- Unknown mail letter carrier (male) 2: "And we submit; that was in Newington. So that we submit like a restraining order for this person"
- Defendant Campbell: "Like a; like a; like a trespass warning"
- Unknown mail letter carrier (male) 2: "Exactly"

During the interaction of the "meeting of the minds", the unnamed individual stated, his Draconian goal: feelings trump everyone's constitutional rights. To arrive at his Machiavellian end of no hurt worker feelings for workers in the post office at 12 Crossroads Plaza, the employees will burn the Constitution and be verbally intimidating.

31. Defendant Darby starting at about 10:39 AM EST, shares with Defendant Campbell that culture of the US Post Office at 12 Crossroads Plaza is highly dysfunctional and he, Defendant Darby has anger issues; Darby stated, "I'd be wrong if would have 'snapped' and grabbed him [Plaintiff] and thrown him to the ground"

32. At about 10:40 AM, EST, Defendant Campbell confirmed via Defendant Darby that any member of the public can walk 360 degrees around the post office at 12 Crossroads Plaza. (Defendant Darby confirmed that Plaintiff could not be trespassing outside the building of the post office at 12 Crossroads Plaza.)

- Defendant Campbell: "When you were loading your truck is that in that area where like the public can park too?"
- Defendant Darby: "And that's the problem because we don't own the property"
- Defendant Campbell: "Yeah"
- Defendant Darby: "So basically any anybody people come through there all the time"
- Defendant Campbell: "So 360 around the building is something that anyone in the general public can access?"
- Defendant Darby: "I think because ah this is this is a public building like you're saying"
- Defendant Campbell: "Yes, sir"
- Defendant Darby: "So we probably have to find, I don't know, [inaudible] upper management has to do something to fix that"

33. At about 10:41 AM EST, Defendant Darby admitted he was excited 9 February, 2024:

- Defendant Darby: "My; my; anxiety; I go to therapy and everything; my anxiety was triggered and I got defensive"
- Defendant Campbell: "And what does that mean? And like you felt internally defensive?"
- Defendant Darby: "Yes"
- Defendant Campbell: "Did you say or react in any kinda way?"
- Defendant Darby: "No; no; no; I didn't"
- Defendant Campbell: "OK"
- Defendant Darby: "I didn't"
- Defendant Campbell: "Alright"

34. At about 10:43 AM EST, Defendants Darby and Campbell converse about their mutual low opinion about the Plaintiff and how they entertain ill tidings may befall the Plaintiff and how 12 Crossroads Plaza is a potential place of violence.

- Defendant Campbell: "It's all; yeah; it's pretty consistent; with with a; I think it's a look; it seem; I can't say for sure; I don't want to insensate anything but it seems like it's something consistent with one who like wants to get a rise out of someone in order to so that they can sue."
- Defendant Darby: "Unfortunately he will get it from the wrong person one day and they aren't going to care about the camera! You know what I am saying."
- Defendant Campbell: "Yeah"

35. Defendant Campbell, on behalf of the West Hartford Police Department, entered into an agreement with members of the USPS at 12 Crossroads Plaza to commit the tort of negatively impacting the Plaintiff's movements by getting him barred via a trespass from a federal building because the Plaintiff engages in a Constitutionally protected activity; an activity that the postal workers at 12 Crossroads Plaza do not like. The plan, which was coordinated with West Hartford police management, was to have Plaintiff trespassed via harassing customers or staff. Postal workers have a meeting of the minds trying to game system and work with WHPD to solicit trespass for engaging in acknowledged legal and Constitutionally protected activities.

- Unknown mail letter carrier (male) 3: "Let me ask you this real quick; um, I know, if if any kinda grounds with any kinda grounds of trespass would be involved if he's harassing people and employees"
- Defendant Campbell: "um hum"
- Unknown mail letter carrier (male) 3: "or customers; would it be grounds for trespass?"
- Defendant Campbell: "Yeah"
- Unknown mail letter carrier (male) 3: "from this property?"
- Defendant Campbell: "**Yeah; so that's something I am working with my supervisor to see what's going on when it comes to a government-type property.**" (emphasis added)

36. At about 10:48, Defendant Campbell while speaking with Defendants Madore and Darby as well as others confirmed that any member of the public can record in public and the USPS office at 12 Crossroads Plaza does not have a defined and/or segregated area outside of the building:

- Defendant Campbell: "So it's it's stressful. I'm not takin'; I'm not; I get it; I have to talk to you with my the law enforcement hat"
- Defendant Madore: "Legally yes"
- Defendant Campbell: "As a person who is reasonable ... hey, that's not something ... "
- Unknown mail letter carrier (male) 3: "Morally standing we agree ... NO ... but by law ... he's not breaking the law"
- Defendant Madore: "Right; right"

37. At about 10:48, EST, Defendant Campbell while speaking with Defendants Madore and Darby as well as others confirmed that any member of the public can record in public and USPS members threatened violence to that persons who dare record them:

- Defendant Madore: "Until he starts engaging. Like, remember last time ... "
- Unknown mail carrier (female) 1: "[inaudible] He did to me just now"
- Defendant Campbell: "Yes"
- Unknown mail carrier (female) 1: "What if I don't want to be recorded"
- Unknown mail carrier (male) 4: "You're in a public space"
- Defendant Campbell: "What if she; I am sorry "
- Defendant Madore: "What if she doesn't feel comfortable with him; cause she asked him please stop ... cause he had the phone in her face. Like this ... can you please stop; I

don't feel comfortable"

- Unknown mail carrier (male) 4: "Your allowed to be recorded; there is nothing you can do about it"
- Unknown mail carrier (female) 1: **"What if I punched him?!?"**

38. At about 10:49 AM, EST, Defendant Madore admits Plaintiff was threatened by one of her employees for doing a Constitutionally protected activity: Defendant Madore: "He had a confrontation with one of our other employees"

39. At about 10:50:50, Defendant Campbell during his “meeting of the minds” with Defendants Darby and Madore unequivocally stated that the WHPD has the goal to remove Plaintiff's Constitutional rights as WHPD is working on overcoming the federal obstacle as the the WHPD is “Trying to see [how remove First Amendment rights]; what can be done regarding; some kind of like; formal like trespass warning”.

40. At about 10:50:50, Defendant Campbell during his “meeting of the minds” with Defendants Darby and Madore unequivocally, Defendant Darby stated his threat, “I was ready to take him [the Plaintiff] out right there!”.

41. At about 10:57 AM EST, Defendant Campbell meets with Sergeant Begin to be advised as how to situation. Audio was turned off. This overt act proactively destroyed evidence as the conversation was lost.

42. At about 11:00 AM EST, Defendant Campbell meets with Defendant Madore; he recaps Sergeant Begin's advise: trespass the Plaintiff using the USPS Inspectors and then Defendant Campbell has a unique message: ignore the Plaintiff:

- Defendant Campbell: “[in whisper] I would just recommend too that employees as difficult as it is because as it is because just like anyone else if you don't give them attention and

don't like and if you kinda give 'em if you tell what they are trying to do they don't stick around"
- Defendant Madore: "You just pretend that they are not even there"
- Defendant Campbell: "Yeah. And so like even as law enforcement people do that stuff I walk right by 'em. Even with him as soon as I walked up. I said hi how you doing? Walked in and thumbs up ... how's it goin'? You know like"
- Defendant Madore: "And what did he do nothing? Right?"

43. Defendant Campbell then again instructs Defendant Madore to share with USPS staff to ignore the Plaintiff. And Defendant Madore confirms receipt of the conspiratorial message.

- Defendant Campbell: "But, if, I would just tell everyone else just ignore him."
- Defendant Madore: "Right"

44. At about 11:02 AM EST, then an unknown woman approaches Defendants Campbell and Madore and asks if it would be authorized to punch the defendant:

- Unknown Female: "If, by accident, somebody flips over and we punch him or do something to him; we get arrested right?"
- Defendant Campbell: "Yeah, I recommend not punching some one."

45. At about 11:15 AM EST on 9 February, 2024, CASE/INCIDENT REPORT for the Plaintiff's "DISTURBANCE". Many factual inconsistencies exist in report 400006342-00009367 exist; additional that additional video/audio files would help the reader ascertain truth:

> On 3/1/24, Mark [Plaintiff] came to the Police Department lobby to speak with me [Officer Dickman, the signing investigator] about the report documentation from the initial incident. Mark requested some minor changes to the report and I [Officer Steven Dickman] reviewed his camera recording with him that was unable to be viewed at the time of the incident.

46. The third paragraph, first sentence,

> "filming the USPS employees loading their work vehicles with mail," should be corrected to "filming USPS employees around their work vehicles." After viewing the video the USPS employees were not loading

mail. In the third paragraph, the following sentence should be redacted.

'Mark approached Darby and asked who the Post Office manager was and how to inquire on a piece of mail that was sent and certified. Darby directed Mark inside to the manager, Tracey Madore. In the video, Mark was not speaking about his mail, no[r] did Darby direct...him to management' These corrections are made due to witnessing the recording of Mark [Plaintiff] on scene from his laptop."

**Thursday, 15 February 2024**

47. At approximately 10:55 AM EST, Mr. Abdus Salam "Billy" Bilal called 9-1-1 to report an non-emergency; non-jurisdictional call; during the call, he stated: "No it's not [an emergency]", Billy was not rerouted to USPS nor was he told he call the wrong jurisdiction. He continued: "We have a guy he's bothering us; we already complained; he; ah; ah; he is taking...He was here before too I think...he taking our...video..."He's over the counter".

48. At approximately 10:57 AM EST, WHPD dispatch said "Mark Wozar is back taking videos". WHPD sent officers again to investigate a non-emergency, non-crime that was outside their jurisdiction.

49. Defendant Madore screamed, "Can I help you?" Plaintiff responding, "Tracy, oh yes, you can help me." Then Tracy stating "I'm in the middle of doing something." Next, the conversation would show Plaintiff questioning, "But you came out to take customers." Finally, as she is walking away, she responds, "I'm not taking customers!" Then, she can be clearly heard saying. "What does he need?" I then asked "Why is no one taking me?" Tracy yells "There's three windows. What does he need? What does he need?"

50. Intimidating rant from Defendant Santiago: "You wanted the stamps; I sell you the stamps; stop

bothering you!" and then walks off in a huff! When she returned she refused service stating, "Where's my phone? Where's my phone? I am NOT GOING TO TAKE YOU!"

51. At approximately 11:04 AM EST, an unknown person called in to say, “He's video recording everything” corroborating of constitutionally protected activity.

52. At approximately 11:06 AM EST, Ms. Rachel Groves called 9-1-1 and said “He's standing on the counter”. Rachel was not rerouted to USPS nor was she told that she the call was to wrong jurisdiction.

53. At approximately 11:07 AM EST, WHPD dispatch said “Mark is standing on the counter now”.

54. At approximately 11:16 AM EST, Officer Wallace stated to Defendant Santiago, “We already explained to you guys he can videotape and everything” corroborating of constitutionally protected activity.

55. At approximately 11:16 AM EST, Billy bluntly stated “We don't want him here.”

56. Officer Wallace, at approximately 11:17 AM, correctly states he is out of his jurisdiction saying, “Well, like I said, unfortunately it is a federal post office; he's all; he has the right to videotape.” This notification states conspiratorial goal: infringed upon the Plaintiffs Constitutional rights.

57. At approximately 11:18 AM, EST, asked, Defendant Santiago, Billy, and Rachel, “Was he [the Plaintiff] standing on the counter at all?”

58. Rachel, then answers Officer Wallace's or Sergeant Begin's question, “Was he up on the counter at all?” with “I wasn't out here”; Rachel's response directly contradicts part of her 9-1-1 call in which she said “He's standing on the counter”.

59. Defendant Santiago then states, “We have a camera over here recording him.”

60. Officer Wallace or Sergeant Begin re-asks the standing on the counter question, asking for a second time, “Was he [the Plaintiff] standing on the counter at all?”

61. Defendant Santiago frantically states, “Yes! He don't move from here!”

62. Officer Kaselouskas at about 11:19 AM EST stated to Plaintiff, “You can sue them for whatever you wanna do. It's up to you; **it's how the post office has been conducting business here. It's how their management instructs them to conduct business. I don't know if personal feelings are getting involved; it seems like it might be at this point**.” (Emphasis added.)

63. Per Sergeant Begin's body camera at about 11:19 captured the following conversation:

- Defendant Santiago: “He was doing this over here.”
- Sergeant Begin: “Banging?”
- Unknown male voice (possibly the supervisor from Newington): “Banging? Yes! Banging!”
- Sergeant Begin: “K”
- Defendant Santiago: inaudible possibly a Spanish remark
- Sergeant Begin: “OK; would you guys be willing to write a sworn written statement?”
- Defendant Santiago: “Yes”

64. At about 11:19:38 AM EST on 15 February 2024 the following conversation been the Plaintiff and Sergeant Begin was recorded.

- Plaintiff: “Am I being detained?”
- Sergeant Begin: “Yes for now”
- Plaintiff: “For what crime?”
- Sergeant Begin: “We'll get into that; we will get into that. But right now you are being detained.”
- Plaintiff: “For what crime?”
- Sergeant Begin: “For Breach of Peace; multiple people called and saying that there is someone who is laud, banging on the counter, refusing to leave; telling people he's allowed to record who ever he wants. I don't know if that's the exact words you used but that's what was relayed to me.”

65. Per Officer Kevin Kaselouskas' body camera at about 11:20 AM EST .

- Plaintiff: "So what did I do according to that rises to leave of breach the peace?"
- Officer Kaselouskas: "Hum. Hum. Hum. Let's see. [Inaudible] I didn't talk to them. **I don't know the actions they are accusing you of**. I just know what the Sergeant said." (Emphasis added.)

66. Officers Wallace and Dickman then conferred with Sergeant Begin on an unrecorded audio line. Even though it was established that Plaintiff was not "on the counter", the word "banging" was not heard until prompted by the "interview committee", no verbal threat was even mentioned let alone heard, which is required to prosecute Breach of Peace in the 2nd Degree, Rachel stated directly "I wasn't out here", and no elements of the crime could be articulated with respect to this instance, 5 armed WHPD employees re-entered known federal property.

67. On 15 February 2024, at approximately 11:28:32 AM, EST, non-jurisdictional misdemeanor arrest for Breach of Peace, 2nd Degree.

68. The Plaintiff's seizure was based, in part, as retaliation; in West Hartford, Hartford County, Connecticut, within a Post Office Hartford in the District of Connecticut, Hartford County, Connecticut falls within the jurisdiction of the United States and/or the Fourteenth Amendment to the United States Constitution, arises out of the Plaintiffs denial of movement guaranteed under the Privileges or Immunities Clause is Amendment XIV, Section 1, Clause 2 via an issuance of an trespass notice which is was a conspiratorial goal on the Plaintiff, based, in part, as retaliation, on or jurisdiction of the United States District Court for the District of Connecticut about February 15, 2024 in West Hartford, Hartford County, Connecticut, within the Hartford District of Connecticut. Hartford County, Connecticut falls within the jurisdiction of the United States District Court for the District of Connecticut.

69. At approximately 11:35 PM, EST, Officer Wallace received three simultaneous Incident Statement Forms from "Billy", Rachel, and Defendant Santiago. Officer Wallace's practice interviewing multiple witnesses[2] at the same time goes against best practices per "The Science of Collecting Eyewitness Evidence: the time mark is particularly disturbing; Officer Wallace says: "Explain everything; how you were feeling; I understand...you guys explain everything...anything and everything...especially" at this moment a paper appears to move across the blurred screen and then Officer Wallace says, "Did you catch that boss?"

70. At approximately 11:38 AM, Officer Wallace of the WHPD while conducting an out-of-jurisdiction misdemeanor investigation in the United States Post Office at 12 Crossroads Plaza asked postal clerks, possibly "Billy" and/or Rachel, "I'm gonna to need to try to get ah the number of how I can get in touch with whoever I can get the cameras from".

71. At approximately 11:44 AM, Officer Wallace of the WHPD while conducting an out-of-jurisdiction misdemeanor investigation in the United States Post Office at 12 Crossroads Plaza asked postal clerks, possibly "Billy", Defendant Madore, and/or Rachel, the following dialog ensued:

- Officer Wallace: "Who do I get in contact with...for..."

2 Procedures to consider when interviewing the witness : Separate multiple witnesses to guard against social influence and contamination – Discourage witnesses from speaking to one another or to others in the area as eyewitnesses cannot play back memories as if replaying a video tape, and therefore, eyewitness reports should not automatically be considered a highly accurate account of the actual event. To make matters more complicated, eyewitness evidence can be contaminated at a number of points in the investigative process (Sandoval, 2003). For instance, overheard co-witness information or investigator comments and questions are known to alter witnesses' original memories of an event. Eyewitnesses are typically unaware of memory errors or contamination by factors occurring after the event. Thus, they may confidently report what they remember and remain confident when they identify the perpetrator despite certain outside influences that have undermined the reliability of their memory (Sporer, Penrod, Read, & Cutler, 1995). Such a process has led to numerous erroneous eyewitness identifications that have resulted in the wrongful conviction of legally innocent persons (Scheck, Neufeld, & Dwyer, 2001).

- Defendant Santiago (over Officer Wallace): "For the camera?"
- Defendant Madore: (indistinct noise) "No; there not coming; the inspector said he was going to come."
- Unknown female voice: "Okay; okay; ok,"
- Defendant Madore: "The inspector said. 'he's going to contact our local one and that they are going to call me back. We, they're the only ones that have access.'
- Officer Wallace: "Yeah, yeah, yeah, I know that; I'm trust trying to figure out how I can get this. Who who am I going to talk to?"
- Defendant Madore: "Hmm. I'll give you my postmaster's information. How do we get the camera information? They have to talk to...so I have to find out...do I give him the local number or, yep...OK alrighgtI will call you right back. Alright; alright; bye."
- Officer Wallace: "Even if you guys can get it for Plaintiff and get a copy of it and I will come and pick it up."

72. Defendant Madore makes the following declarative statement "Yeah, I know last time they told us he's allowed to videotape but the inspector said we don't have to give him anything". This statement encapsulates the USPS's disregard for the litigation hold letters and the constitutionally guaranteed protection to redress government. Defendant Madore stated the post office does not "have to give" a private citizen anything.

73. At approximately 11:42 AM, EST, Defendant Madore confirmed she received the litigation hold letter by stating, while discussing the matter video footage to include the video from her, Defendant Madore's private cell phone with Officer Wallace, "Well I'll show you what he [the Plaintiff] gave me."

74. At approximately 11:42 AM, EST, Defendant Madore confirmed the Postal Inspector told her not to provide any information to the Plaintiff via this dialog with Officer Wallace:

- Defendant Madore: "So they [the post office clerks] said he [the Plaintiff] wanted to speak to me and I said...this was last week...and I said,'Alright, can I help you?' And he's videotaping Plaintiff and he goes...he handed it [the litigation hold letter] OK and he goes I want the footage from your phone and looked over, right, I got the camera apparently this is me...you can see I am just walking, right. I always walk with my phone cause I'm the boss and he goes 'I want the

footage from your phone.' I said, 'footage from my phone?' and he said 'Yeah, you were videotaping me.' First, of all, I wasn't. Second, of all, **I'm not giving you anything!** I said, 'Thank you have a nice day.' 'So, you received it, right; you received it.' And I just went on my way," (emphasis added)

- Officer Wallace: "Hmm...k"
- Defendant Madore: "Yeah"
- Officer Wallace: "So...Whenever you guys get that footage"
- Defendant Madore: "Yep"

The dialogue continues, in part:

- Defendant Madore: "And I can give this to the inspectors also?"
- Officer Wallace: "Yep; if you wanna make a copy of that; do what ever you need to do. We already have this; do what ever you have to do. You can keep this."
- Defendant Madore: "OK, good. **They** [the postal inspectors] **told Plaintiff I'm not allowed to give anything anyway; even if I wanted was trying** to....(inaudible) The inspector said **'you don't give anything ever; you don't give correspondence ever! It's above my pay grade.**"

This dialog shows that USPS knew of the litigation hold letter and made a decision "above [Defendant Madore's] pay grade" of 12 Crossroads Plaza "boss" to provide anything to the Plaintiff. The postal inspectors comments shows that the staff of the 12 Crosswords Plaza would not allow the Plaintiff to redress grievances nor would comply with litigation hold letter.

75. A approximately 12:24:24 PM, EST, Officer Wallace continues his misdemeanor investigation, an investigation has is outside of jurisdiction, by handing Rachel what looks like a blank Incident Statement Form.

76. Officer Wallace stated to witnesses not to complete the date and time of the form per "Nope. Nope. I take care of that part"

77. At approximately 12:25 AM, EST, Defendant Madore confirmed that she would contact Officer Wallace about the CCTV footage:

78. Aat apparently 12:49 PM, EST, Officer Wallace entered his CASE/INCIDENT REPORT for the

Plaintiff's arrest. Many factual inconsistencies exist in this report additional that additional video/audio files would help the reader ascertain where Officer apparent for this report and have been referenced in previous submissions.

79. At approximately 1:38 PM, EST, through the expletive laced telephonic rant from Postal Inspector Mcniff to Officer Wallace, "If you guys have the authority to yeah, trespass him [the Plaintiff]; f*ck him! [the Plaintiff];" an order for trespass was made and arrest in retaliation and fulfilling or executed another part of their conspiracy that infringed upon the Plaintiffs Constitutional rights.

80. The Assistant State's attorney dismissed the criminal charge before a plea was even entered.

81. In the recent Supreme Court opinion in *Thompson v. Clark,* 596 U.S. (2022), the Court clarified the application of malicious prosecution claims under Section 1983. The Court held that a plaintiff in a Section 1983 malicious prosecution claim is not required to show that his criminal prosecution ended with an affirmative indication of his innocence. Rather, a plaintiff only needs to show "that his prosecution ended without a conviction." The charge herein ended without a conviction. Plaintiff was charged and prosecuted for Breach of Peace in the 2nd Degree in the Community Court of Harford County.

82. West Hartford, the municipality, has a formal written policy that leads to loss of liberty and an unwritten rules of engagement that routinely allows calls for non-emergencies, non-exigent circumstances, non-hot pursuit, and made-up crimes to be investigated. West Hartford routinely mutes conversations with the public; USPS the organization made the decision not to provide video evidence to the prosecutor.

83. The Plaintiff was the object of scorn and ridicule of postal workers and West Hartford police as he was doing a Constitutionally protected activity.

84. USPS has yet to redress grievances. They sent seemingly auto-generated emails after electronic submission.

## Causes of Action

COUNT ONE - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983
VIOLATION OF THE FOURTH AMENDMENT
(False warrantless/"speedy" arrest of Mark Wozar)
(Against: Christopher Campbell (official and individual capacities), Jeffrey Swank (official and individual capacities), Defendant Madore (official and individual capacities), Mark Darby (official and individual capacities, Teresa Santiago (official and individual capacities), Tyneese Selby, (official and individual capacities), West Hartford Police Department Town of West Hartford, and/or United States Post Office)

85. Paragraphs 1 through 84 are hereby incorporated by reference as though fully restated herein.

86. On February 15, 2024, the WHPD Officers, acting under color of law, jointly participated in, and effected, the warrantless/"speedy" arrest of Plaintiff Mark Wozar for the alleged crime of breach of peace in the second degree under CT Code § 53a-181. USPS officers did not contact the correct law enforcement branch to investigate the constitutionally protected activity nor did WHPD advise callers of the correct jurisdiction.

87. The WHPD Officers seized the Plaintiff (Mark Wozar) whom they "hate" and arrested him without a warrant and knowingly did so without probable cause to believe that Plaintiff had

committed the crime for which he was charged, or any other criminal offense. Indeed, the arresting officer could not articulate the element(s) of the crime for which the plaintiff was arrested. Documentation also included fabricated evidence.

88. At the time of the Plaintiff's arrest, the facts and circumstances within the USPS defendants' joint knowledge, as well as those available to the WHPD Officers, were not sufficient to warrant a reasonably prudent police officer to believe that under the circumstances present at the time, that Plaintiff had violated any criminal statute or committed any criminal offense. Again, the arresting officer could not articulate the element(s) of the crime for which the Plaintiff was arrested. The arrest was to make others feel good and punish plaintiff.

89. No reasonable police officer in either of the defendant police officers' positions on February 15, 2024 would have believed that probable cause existed to make a warrantless/"speedy" arrest of the Plaintiff under the totality of the circumstances as described in the above paragraphs.

90. Armed officers of the West Hartford Police Department arrested the Plaintiff, Mark Wozar, on a federal reservation, which was outside of their jurisdiction for a misdemeanor offense; without contacting the jurisdiction of record; the officers on multiple occasions knew they were out of jurisdiction but made the arrest anyway. The arrest was void of exigent circumstances.

91. Officers of the West Hartford Police Department arrested the Plaintiff, Mark Wozar, entered the federal reservation armed for a misdemeanor without the memorandum granting leave per statute.

92. Officers of the West Hartford Police Department and USPS violated extraterritoriality and

therefore forfeit able to claim qualified immunity as they violated "clearly established statutory or constitutional rights of which a reasonable person would have known".

93. Plaintiff suffered damages, for which he is entitled to recover.

COUNT TWO - UNREASONABLE SEIZURE UNDER 42 U.S.C. 1983
VIOLATION OF THE FOURTH AMENDMENT
(Malicious Prosecution)
(Against: Christopher Campbell (official and individual capacities), Jeffrey Swank (official and individual capacities), Defendant Madore (official and individual capacities), Mark Darby (official and individual capacities, Teresa Santiago (official and individual capacities), Tyneese Selby, (official and individual capacities), West Hartford Police Department Town of West Hartford, and/or United States Post Office)

94. Paragraphs 1 through 84 are hereby incorporated by reference as though fully restated herein.

95. USPS officers did not contact the correct law enforcement branch to investigate the constitutionally protected activity nor did WHPD advise callers of the correct jurisdiction.

96. In the recent Supreme Court opinion in Thompson v. Clark, 596 U.S. (2022), the Court clarified the application of malicious prosecution claims under Section 1983. The Court held that a plaintiff in a Section 1983 malicious prosecution claim is not required to show that his criminal prosecution ended with an affirmative indication of his innocence. Rather, a plaintiff only needs to show "that his prosecution ended without a conviction." The charge herein ended without a conviction.

97. Plaintiff was charged and prosecuted for Breach of Peace in the 2nd Degree in the Community

Court of Harford County. The charge was filed maliciously and for improper purposes.

98. Defendants knew, and were aware, that the prosecution of Mark Wozar was frivolous and malicious, as evidenced by the fact that they did not supply additional "victim" statements which resulted, in part, of the dismissal of the charge prior to the jury trial commencing. Additionally, no video/audio footage was provided to the state both from USPS and/or WHPD despite multiple litigation hold letters being delivered and accepted by the USPS. Next, a subset of witness statements could be not verified nor cross-examined as they came from anonymous sources. Despite being aware from the very beginning that no probable cause existed to charge and prosecute the Plaintiff, much less convict him, Defendants chose to force Plaintiff to endure with multiple court appearances and incur cost because USPS employees might feel threatened and possible criminal proceeding may result.

99. The charge was finally dropped against the Plaintiff. Defendants knew that was the case from the very beginning was to get/force Mr. Wozar to undergo the humiliating process of being prosecuted, multiple court hearings, as well as public humiliation in the news media with false allegations and/or incomplete statements about the Plaintiff and get him not to return to the USPS at 12 Crossroads Plaza which was the ultimate chilling goal.

100. The defendant officers violated Plaintiff's Fourth Amendment rights to be free from malicious prosecution. The defendants caused criminal proceedings to be instituted and maintained against the Plaintiff; they did so with malice and without probable cause; the proceeding terminated in Plaintiff's favor and without conviction; Plaintiff was unlawfully

seized as a result of the criminal proceedings; defendants' conduct caused Plaintiff's injuries; defendants acted under color of law.

101. Officers of the West Hartford Police Department and/or USPS of reasons listed above in this count forfeit able to claim qualified immunity as they violated "clearly established statutory or constitutional rights of which a reasonable person would have known".

COUNT THREE - RETALIATION UNDER 42 U.S.C. § 1983, 1985, and/or 1986 and/or 18 U.S.C. § 241 and/or 242
VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
(Against: Christopher Campbell (official and individual capacities), Jeffrey Swank (official and individual capacities), Defendant Madore (official and individual capacities), Mark Darby (official and individual capacities, Teresa Santiago (official and individual capacities), Tyneese Selby, (official and individual capacities), West Hartford Police Department Town of West Hartford, and/or United States Post Office)

102. Paragraphs 1 through 84 are hereby incorporated by reference as though fully restated herein.

103. Plaintiff's actions on February 15, 2024 of expressing criticism of the defendant police officers, as well as in invoking his civil rights, as described above in more detail, are safeguarded by the First Amendment to the United States Constitution.

104. Using their respective authorities under color of state law, the Individual Defendants subjected plaintiff to the deprivation of his rights under the First Amendment by retaliating against him for exercising those rights. USPS officers did not contact the correct law

enforcement branch to investigate the constitutionally protected activity nor did WHPD advise callers of the correct jurisdiction.

105. Motivated to punish and intimidate the plaintiff for his exercise of his free speech, the Individual Defendants engaged in various harmful acts against the plaintiff in violation of clearly established First Amendment law, resulting in Mr. Wozar's arrest. These acts include:

a. Interrogating the plaintiff against his will and without a warrant or any legal basis to do so, and doing so for an unlawful and unreasonable period of time;

b. Harassing and intimidating the plaintiff, berating/threatening him, arguing with him and accusing him of being criminal, despite having absolutely no evidence or indication he engaged in any criminal conduct:

c. Generally treating the plaintiff as if he is second-class citizens, purposefully causing him emotional harm and fear;

106. The foregoing actions are independently unconstitutional but also were intended to send a warning to plaintiff, or anyone else in the community bold enough to assert his rights or criticize the defendants, by exercising his First Amendment rights in the future.

107. It is clearly established that retaliating against individuals by arresting them under a law that is generally not used to arrest similarly-situated individuals is a violation of the First Amendment. Every reasonable government official would have had a fair warning that doing so and participating in a scheme to do so is unconstitutional.

108. It is furthermore clearly established that retaliating against individuals by engaging in

the various harmful acts described above is a violation of the First Amendment. Every reasonable government official would have had a fair warning that doing so and participating in a scheme to do so is unconstitutional.

109. The facts also demonstrate that the criminal charge the Individual Defendants assigned to Mr. Wozar was a sham charge, regardless of attempts to fabricate probable cause or convince a magistrate to sign a criminal complaint. Thus, even if probable cause existed, the application of an unenforced law to Mr. Wozar is insufficient to outweigh the retaliatory animus illustrated by the surrounding circumstances. The facts cannot objectively justify Mr. Wozar's arrest.

110. The Individual Defendants' unconstitutional acts, motivated by retaliatory animus, directly harmed the plaintiff by chilling his ability to exercise his First Amendment rights and by causing them pecuniary loss and emotional harm and distress.

111. Had it not been for the retaliatory animus, "hate", the Individual Defendants would never have arrested Mr. Wozar on February 15, 2024.

112. Officers of the West Hartford Police Department and/or USPS of reasons listed above in this count forfeit able to claim qualified immunity as they violated "clearly established statutory or constitutional rights of which a reasonable person would have known".

COUNT FOUR - CONSPIRACY TO DEPRIVE CIVIL RIGHTS
UNDER 42 U.S.C. 1985(3), and/or 1986, 18 U.S.C. § 241 (Conspiracy Against Rights), and/or 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)

(Against: Christopher Campbell (official and individual capacities), Jeffrey Swank (official and individual capacities), Defendant Madore (official and individual capacities), Mark Darby (official and

individual capacities, Teresa Santiago (official and individual capacities), Tyneese Selby, (official and individual capacities), West Hartford Police Department Town of West Hartford, and/or United States Post Office)

113. Paragraphs 1 through 84 are hereby incorporated by reference as though fully restated herein.

114. Defendants Santiago, Campbell, and/or Madore, led conspiracies for the purpose of depriving, either directly or indirectly, the plaintiff of the equal protection of the laws of the United States and/or of the equal privileges and immunities under the laws of the United States.

115. Plaintiff was targeted after Mr. Wozar chose to express criticism and assert his civil rights, he was met with retaliation and humiliation.

116. In furtherance of the conspiracy, Plaintiff was arrested illegally by the defendant police officers and transported for incarceration.

117. Plaintiff suffered damages, for which he is entitled to recover pursuant to 42 U.S.C. 1985 (3) and/or 1986.

118. Officers of the West Hartford Police Department and/or USPS of reasons listed above in this count forfeit able to claim qualified immunity as they violated "clearly established statutory or constitutional rights of which a reasonable person would have known".

COUNT FIVE - ATTEMPT TO INDUCE A PERSON TO DESTROY EVIDENCE UNDER 18 U.S.C. 1519

(Against: Christopher Campbell (official and individual capacities), Jeffrey Swank (official and

individual capacities), Defendant Madore (official and individual capacities), Mark Darby (official and individual capacities, Teresa Santiago (official and individual capacities), Tyneese Selby, (official and individual capacities), West Hartford Police Department Town of West Hartford, and/or United States Post Office)

119. Paragraphs 1 through 84 are hereby incorporated by reference as though fully restated herein.

Specification One:

120. In or about 19 January 2024, in the HARTFORD District of Connecticut, TYNEESE SELBY after speaking/conspiring with TERESA SANTIAGO did unlawfully, willfully, and knowingly, in a matter within the jurisdiction of the judiciary and/or executive branch(es) (post office) of the Government of the United States, made and used false statement knowing the same to contain materially false, fictitious, and fraudulent statements and entries which included, but not restricted to: "He's [Plaintiff] video taping her. [Defandant Santiago] Last week we had a minor misconstrue-thing and I had to defuse that. I asked him to delete that. Now he's video taping her...I asked him plenty of times to delete it...I don't want her feel to threatened by this guy!"(emphasis added) "You can't videotape a federal employee...how may times do I have to tell you that?", "Don't videotape my employee again please", and "Can you delete that right now? Delete it right now. Take out your phone and delete it right now!" demanded plaintiff destroy evidence on three occasions before police officers (to include but not restricted to: Sergeant Caless, Officer Swank, and Officer Bowsky) knowing it may in an

official proceeding.

Specification Two:

121. In or about 19 January 2024, in the HARTFORD District of Connecticut, Defendant Swank did unlawfully, willfully, and knowingly, in a matter within the jurisdiction of the judiciary and/or executive branch(es) (post office) of the Government of the United States, muted his audio device while speaking with Plaintiff making it unusable for the intended purpose.

Specification Three:

122. In or about 15 February 2024, in the HARTFORD District of Connecticut, DEFENDANT Campbell after speaking/conspiring with Sergeant Begin did unlawfully, willfully, and knowingly, in a matter within the jurisdiction of the judiciary and/or executive branch(es) (post office) of the Government of the United States, muted his body camera not to record his conversation making the conversation unusable for the purpose intended.

Specification Four:

123. In or about 15 February 2024, in the HARTFORD District of Connecticut, DEFENDANT Campbell after speaking/conspiring with Sergeant Begin did unlawfully, willfully, and knowingly, in a matter within the jurisdiction of the judiciary and/or executive branch(es) (post office) of the Government of the United States, muted his body camera not to record his conversation with Rachel, a member of the public and from a federal agency, making the conversation unusable for the purpose intended.

Specification Five:

124. In or about 15 February 2024, in the HARTFORD District of Connecticut, DEFENDANT Campbell after speaking/conspiring with Sergeant Begin did unlawfully, willfully, and knowingly, in a matter within the jurisdiction of the judiciary and/or executive branch(es) (post office) of the Government of the United States, muted his body camera not to record his conversation with Billy, an unknown person, possibly the Newington Supervisor, Defendant Santiago, members of the public and from a federal agency, making the conversation unusable for the purpose intended.

Specification Six:

125. Defendant Madore clearly states the USPS intention not to provide requested evidence to Plaintiff.

126. Per provided documentation USPS personnel were provided litigation hold letters on February 10, 2024 and February 22, 2024 and various other correspondence but no video/audios of the events were provided nor were sanctions imposed. On March 29, 2024, Plaintiff received correspondence from the Office of Counsel United States Office Of Inspector Services refusing to provide the Plaintiff any of the requested material.

127. On 15 February 2024, at approximately 11:42 AM Defendant Madore after being briefed by the postal inspectors made the decision not to provide Plaintiff with requested material.

128. On multiple occasions, the plaintiff supplied the USPS defendants with litigation hold letters but was rebuffed in writing.

Specification Seven:

129. The plaintiff was told after reporting his ambush by USPS employees in the WHPD lobby that their surveillance system "jumps" and did not capture the threat. USPS made the decision not to provide material.

130. Officers of the West Hartford Police Department and/or USPS of reasons listed above in this count forfeit able to claim qualified immunity as they violated "clearly established statutory or constitutional rights of which a reasonable person would have known".

COUNT SIX – MUNICIPAL AND/OR WHPD LIABILITY
UNDER 42 U.S.C. 1983

131. Paragraphs 1 through 84 are hereby incorporated by reference as though fully restated herein.

132. The City of West Hartford instituted a custom and practice of subjecting innocent citizens who are the subject of questioning, to civil rights violations in violation of the U.S Constitution. Specifically, the City of West Hartford continues to employee, the Defendant, Officer Swank, who according to 3:21-cv-00452-MPS's order, which was filled in The District Court of Connecticut, on September 23, 2023, was found to "demonstrate selective enforcement in violation of the equal protection clause of the Fourteenth Amendment, a[s the] plaintiff...show[ed] both (1) that [he or she was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on ...[an] intent to inhibit or punish[] the exercise of constitutional rights." Azana v. City

133. Defendant Officer Swank has been employed by West Hartford since 1999; he has upon

information and belief, been the subject of at least one complaint of a civil rights violation, which is similar in nature to what occurred to the Plaintiff.

134. Defendant Swank threatened to arrest Plaintiff for failing to identify and not participate in an investigation of a crime that does not exist.

135. WHPD dispatch routinely routes non-emergencies, non-jurisdictional, non-crime calls to field instead of routing them to appropriate agencies.

136. WHPD embellish reports with fabricated data; WHPD excludes exculpatory data from reports' WHPD often excludes new information from reports; WHPD interviews by committee.

137. WHPD does not erase data per Connecticut law; WHPD perpetuate “official”falsehoods.

138. Defendant Officer Swank's recent selective enforcement actions illegally using under color of law against the Plaintiff were taken in furtherance of the City of West Hartford.

139. Officers of the West Hartford Police Department for reasons listed above in this count forfeit able to claim qualified immunity as they violated “clearly established statutory or constitutional rights of which a reasonable person would have known”.

COUNT SEVEN - FEDERAL LIABILITY
UNDER 42 U.S.C. 1983

140. Paragraphs 1 through 84 are hereby incorporated by reference as though fully restated herein.

141. The West Hartford Post Office at 12 Crossroads Plaza instituted a custom and practice of subjecting innocent citizens who are the subject of questioning, to civil rights violations in

violation of the U.S Constitution. Specifically, the West Hartford post office continues to employee, the Defendants "demonstrate selective enforcement in violation of the equal protection clause of the Fourteenth Amendment, a[s the] plaintiff...show[ed] both (1) that [he or she was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on ...[an] intent to inhibit or punish[] the exercise of constitutional rights." Azana v. City

142. Defendants Santiago, Madore, Groves, and/or three unnamed conspirators intimidated and/or threatened Plaintiff in the West Hartford post office at 12 Crossroads Plaza, the WHPD lobby, and streets of West Hartford; their physical and/or verbal intimidation intended to deter a citizen" from engaging in protected First Amendment activity violates that citizen's constitutional rights. USPS allowed WHPD to complete their sworn statements erroneously.

143. USPS denies ability of public to redress grievances; USPS has a policy to not to provide video footage to others for criminal proceedings; thereby, formalizing *Brady* violation policies.

144. USPS at 12 Crossroads Plaza not call postal inspectors; USPS at 12 Crossroads Plaza conspires with local police to trespass members of the public doing constitutionally protected activity and subjugates federal sovereignty because of employees may feel uncomfortable.

145. USPS routinely retaliate against persons as shown in activity pattern at various locales.

146. Officers of USPS for reasons listed above in this count forfeit able to claim qualified immunity as they violated "clearly established statutory or constitutional rights of which a reasonable person would have known".

## PRAYER (Request for Relief)

WHEREFORE, based on the above stated facts, the plaintiff respectfully requests that this Honorable Court award:

1. Damages against the defendants in an amount to be determined at trial which will fairly and reasonably compensate the plaintiff for all compensatory damages to be proven at trial;

    a. Future medical expenses;

    b. Past, present and future pain and suffering;

    c. Loss of enjoyment of life;

    d. Psychological and emotional distress;

    e. Any other compensatory damages to be proven at trial;

2. Punitive damages against the individual defendants in an amount to be determined at trial; and

3. Reasonable attorney fees and costs pursuant to 42 U.S.C. §1988.

4. Any other relief that this Court deems is just and fair;

5. All other damages provided by law;

6. Injunctive relief requiring appropriate training, supervision and discipline in order to remedy all constitutional deprivations which the Plaintiff suffered;

7. Declaratory judgment relief establishing the Defendants' above-described conduct violates the Plaintiff's clearly established constitutional rights.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**PLAINTIFF'S AMENDED CIVIL RIGHTS COMPLAINT (ABRIDGED SECOND REVISION)**

Case CIV No. 3:24-CV-00851 Document TBD Filed August 14, 2024 Page 40 of 41 Page ID #: 40

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

MARK WOZAR
Proper Person
1250 Farmington Ave, West Hartford, CT 06107
(312) 692-9335
mwozar@hotmail.com

## PERJURY DECLARATION

The undersigned under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and the information contained in the complaint is true and correct. 28 USC section 1746; 18 USC section 1621.

Executed at Hartford Connecticut 14 August 2024.

Respectfully submitted,

Mark Wozar
Pro se/proper person
1250 Farmington Ave A17
West Hartford, CT 06107
T: (312) 692-9335
mwozar@hotmail.com

## CERTIFICATION

I hereby certify that on 14 August, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

Counsel for Defendants Madore, Darby, Santiago, and Selby
**Eric Benjamin Miller**
U. S. Attorney's Office-CT
157 Church Street
24th Floor
New Haven, CT 06519
203-821-3700
Fax: 203-773-5373
Email: eric.miller@usdoj.gov

Counsel for Defendants Campbell, Swank, West Hartford Police Department, and Town of West Hartford
**James Newhall Tallberg**
Karsten & Tallberg LLC
500 Enterprise Drive, Suite 4B
Rocky Hill, CT 06067
860-233-5600
Fax: 860-233-5800
Email: jtallberg@kt-lawfirm.com

Respectfully submitted,

Mark Wozar
Pro se/proper person
1250 Farmington Ave A17
West Hartford, CT 06107
T: (312) 692-9335
mwozar@hotmail.com