UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
---------------------------------------------------------------- x
MARK WOZAR,                                          :
                                                     :
                         Plaintiff,                  :
                                                     :        MEMORANDUM &
             -against-                               :        ORDER GRANTING
                                                     :        MOTIONS TO DISMISS
CHRISTOPHER CAMPBELL et al.,                         :
                                                     :
                         Defendants.                 :        3:24-CV-851 (VDO)
---------------------------------------------------------------- x
```

**VERNON D. OLIVER**, United States District Judge:

Mark Wozar ("Plaintiff"), proceeding *pro se*, commenced this action for alleged civil rights violations while he was videotaping postal employees during his visits to a United States Post Office against two categories of defendants: **(1)** The "Municipal Defendants," including the Town of West Hartford (the "Town"), the West Hartford Police Department (the "WHPD"), and police officers Christopher Campbell ("Officer Campbell") and Jeffrey Swank ("Officer Swank") in their individual and official capacities; and **(2)** The "Federal Defendants," including the United States Post Office (the "USPS"), and postal employees Tracy Madore, Mark Darby, Teresa Santiago, and Tyneese Selby (hereinafter the "Federal Official Defendants") in their individual and official capacities. This matter is before the Court on Defendants' motions to dismiss Plaintiff's Amended Complaint, including the motion to dismiss the claims against the Municipal Defendants for failure to state a claim (ECF No. 94), and the motions to dismiss the claims against the Federal Defendants for failure to state a claim and for lack of subject matter jurisdiction. (ECF Nos. 96, 97.) For the reasons stated herein, the motions to dismiss are **granted** and Plaintiff's Amended Complaint is dismissed in its entirety.

## I.    **BACKGROUND**

### A.    **Factual Background**

As alleged in the Amended Complaint, between January 2024 and February 2024, the WHPD was called to respond to a Post Office in West Hartford, Connecticut multiple times in relation to Plaintiff's visits, as he was recording postal employees without their consent. During the first visit, on January 19, 2024, the WHPD dispatched police officers, including Officer Swank, to investigate defendant Santiago's complaint about being recorded by Plaintiff. (First Amended Complaint ("FAC"), ECF No. 88, at 7 ¶¶ 17–18.) Defendant Selby asked Plaintiff to delete his recording and informed Plaintiff that he could not videotape the postal employees. (*Id.* at 9.) On that visit, Officer Swank informed Plaintiff that he was requested to leave the premises and, because he did not leave, the police officers have the right to ask him for identification, to put him in handcuffs, and to take him to jail. (*Id.* at 7 ¶ 20.)

During the second visit, at approximately 10:20 a.m. on February 9, 2024, Plaintiff was walking in the parking lot when he had a confrontation with postal employees Darby and Madore, where Madore asked Plaintiff to stop videotaping her and accused Plaintiff of harassing her. (*Id.* 9–10.) Then, while Plaintiff was being serviced inside the Post Office, Officer Campbell was called to the scene to investigate. (*Id.* at 10.) Officer Campbell discussed Plaintiff's behavior with the postal employees and suggested that they should ignore Plaintiff's behavior. (*Id.* at 15–16.) Officer Campbell also discussed the possibility of a trespass order with the postal employees. (*Id.* at 14.)

Six days later, on February 15, 2024, Plaintiff again returned to the West Hartford Post Office, at which time an employee called the WHPD 911 Emergency Line to report that Plaintiff was taking their video and that Plaintiff was "over the counter." (*Id.* at 17 ¶ 47, 18–

19.) Non-party police officers of the WHPD were dispatched to the Post Office, and Plaintiff was subsequently arrested for breach of peace in the second degree. (*Id.* at 19–25.) A trespass notice preventing Plaintiff from entering the West Hartford Post Office then issued. (*Id.* at 2–3.)

Following Plaintiff's arrest, the prosecutor dismissed the criminal charge before Plaintiff entered a plea. (*Id.* at 24 ¶ 80.) The WHPD subsequently removed the trespass database entry for Plaintiff from its in-house database and sent a department wide email noting the revocation of the trespass warning. (ECF No. 108-1, at 2; ECF No. 109-1, at 2.)

### B. Procedural History

Plaintiff commenced this action on May 9, 2024. (ECF No. 1.) After Defendants filed motions to dismiss under Federal Rule of Civil Procedure 12, Plaintiff filed a motion to amend the complaint. (ECF No. 60.) The Court granted Plaintiff's motion to amend the complaint over Defendants' objections and notified Plaintiff "that the filing of an amended complaint completely replaces the initial complaint." (ECF No. 84.)

On August 13, 2024, Plaintiff filed the Amended Complaint. (ECF No. 88.) The Amended Complaint alleges the following causes of action: (1) false arrest in violation of the Fourth Amendment, (2) malicious prosecution in violation of the Fourth Amendment, (3) retaliation under the First and Fourteenth Amendments, (4) conspiracy to deprive civil rights, (5) attempt to induce a person to destroy evidence, (6) municipal liability, (7) federal liability.

Defendants now move to dismiss the Amended Complaint (ECF Nos. 94, 96, 97), which Plaintiff opposes. (ECF Nos. 103, 105, 106.) Defendants have filed a reply (ECF Nos. 114, 117, 118.)[1]

## II.    LEGAL STANDARD

### A.    Motion To Dismiss Under Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,'" such as when "the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal citations omitted). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 57). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In considering a Rule 12(b)(1) motion to dismiss for lack of standing, courts in this Circuit construe "the complaint in [the] plaintiff's favor and accept as true all material factual allegations contained therein." *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012).

---

[1] The Court previously notified Plaintiff that, under Local Rule 7(d), no sur-replies may be filed without permission of the Court. (ECF No. 83.) Considering Plaintiff's repeated noncompliance with that directive, the Court does not consider Plaintiff's unauthorized sur-replies here.

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57 (internal citations omitted). "It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision[.]" *Carter*, 822 F.3d at 57.

**B.**      **Motion To Dismiss Under Rule 12(b)(6)**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d

147, 153 (2d Cir. 2002) (internal citation omitted). "[T]he court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief." *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 83 (D. Conn. 2020).

Documents filed *pro se* must be liberally construed and interpreted "to make 'the strongest arguments that they suggest.'" *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal citation and quotation marks omitted).

## III.    DISCUSSION

Presently before the Court are three motions to dismiss the Amended Complaint. As for the Municipal Defendants, they argue that the claims are subject to dismissal under Rule 12(b)(6) because: (1) Plaintiff has not alleged specific conduct that the individual Municipal Defendants, including Officer Campbell and Officer Swank, were personally involved in the alleged deprivations of civil rights, as required by 42 U.S.C. § 1983, and (2) Plaintiff fails to allege sufficient facts to plausibly state a claim to relief as to all claims. (ECF No. 94-1.)

The Federal Defendants bring two motions to dismiss. **First**, they argue that the claims against the USPS as well as the Federal Official Defendants in their official capacities should be dismissed under Rule 12(b)(1) and 12(b)(6) for following reasons: (1) sovereign immunity bars the constitutional claims against federal agencies and federal employees in their official capacities, and (2) Plaintiff fails to allege sufficient facts to plausibly state a claim to relief as to the statutory claims. (ECF No. 96-1.) **Second**, they argue that the claims against the Federal Official Defendants in their individual capacities should be dismissed because: (1) qualified immunity bars the constitutional claims, and (2) Plaintiff fails to allege sufficient facts to plausibly state a claim to relief as to the statutory claims. (ECF No. 97-1.)

As discussed below, even interpreting the Complaint to raise the strongest arguments in Plaintiff's favor, the Court holds that Defendants' motions to dismiss must be **granted** and the Amended Complaint must be dismissed in its entirety. In determining whether Plaintiff's claims survive dismissal, the Court liberally construes the Complaint and draws all reasonable inferences in Plaintiff's favor. Thus, although Plaintiff's § 1983 claims against the Federal Defendants for alleged violations of constitutional rights fail as a matter of law, the Court liberally construes those claims as arising under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) to provide the strongest arguments in Plaintiff's favor. *See, e.g.*, *Shue v. United States,* 466 F. App'x 51, 51 (2d Cir. 2012) ("constitutional claims against federal officials are properly analyzed as claims pursuant to *Bivens* . . . rather than 42 U.S.C. § 1983").

## A.    Section 1983 Framework

Section 1983 imposes liability on a "person" who, under color of law, deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "'To state a claim under § 1983, a plaintiff must allege the violation

of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris–Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citation omitted). "If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

## B.    The Bivens Framework

In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). The claim in *Bivens* was a Fourth Amendment claim "against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 596 U.S. 482, 490 (2022) (citing *Bivens*, 403 U.S. at 397). During the following decade, the Court created new constitutional causes of actions only twice more—"first, for a former congressional staffer's Fifth Amendment sex-discrimination claim," *see Davis v. Passman*, 442 U.S. 228 (1979); "and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment," *see Carlson v. Green*, 446 U.S. 14

(1980). *Id.* at 490–91. In the years since *Carlson*, the Court has not implied any additional causes of action under the Constitution.

Although the Court has explained that "creating a cause of action is a legislative endeavor" which requires evaluation of wide-ranging policy considerations, a task more appropriate for Congress, "rather than dispense with *Bivens* altogether," the Court has "emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert*, 596 U.S. at 491 (citation and internal quotation marks omitted). Indeed, the Court has explained that, if there is any reason to think that Congress might question the court's creation of a damages remedy, the court should not do so. *Id.* (citations omitted).

When determining whether to create a new *Bivens* claim, the court conducts a two-step inquiry. "First, we ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* at 492 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). Although the Supreme Court has never provided an exhaustive list of "new" *Bivens* contexts, the Court has offered the following examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40.

"Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S.

at 492 (quoting *Ziglar*, 582 U.S. at 136). "[I]f Congress already has provided, or has authorized the Executive to provide, 'an alternate remedial structure,'" the court cannot create a new *Bivens* remedy. *Id.* at 493 (quoting *Ziglar*, 582 U.S. at 137). A court need not independently weigh the costs and benefits of creating a new cause of action. "Rather, under the proper approach, a court must ask more broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate. . . .If so, or even if there is the potential for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 496 (cleaned up). If "Congress has created any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Ziglar*, 582 U.S. at 137 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (internal quotation marks and alterations omitted).

### C.    Preliminary Matters

#### 1.    Criminal Statutes (Counts 3, 4, 5)

The Court first concludes that Plaintiff's claims brought under Title 18 of the United States Code—including 18 U.S.C. §§ 241, 242, and 1519—are not cognizable because those sections are federal criminal statutes. Because federal criminal statutes do not provide a basis for civil liability, all claims brought under 18 U.S.C. §§ 241, 242, and 1519 are dismissed for failure to state a claim. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo-American jurisdictions by private complaints.").

>           2.      **Federal Defendants**

>                   a.      **Sovereign Immunity Bars Claims Against The USPS And**
>                           **The Federal Official Defendants In Their Official Capacities**

Next, the Court concludes that Plaintiff's claims against the USPS and Federal Official Defendants in their official capacities must be dismissed under the doctrine of sovereign immunity. Plaintiff purports to bring § 1983 claims against the Federal Defendants for alleged violations of constitutional rights but, as explained below, even under a liberal construction of those claims as arising under *Bivens*, the Court must find that sovereign immunity bars Plaintiff's claims.

"[A]n action against a federal agency or federal officers in their official capacities is essentially a suit against the United States," and thus, "such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Because this immunity is "jurisdictional in nature," a plaintiff must show that its claims fall under a valid exception to meet "the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Only a federal law may waive the federal government's sovereign immunity, and such waivers must be expressed unequivocally. *Presidential Garden Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999); *Binder & Binder, P.C. v. Colvin*, 818 F.3d 66, 70 (2d Cir. 2016). Absent evidence of such a waiver, a court must dismiss a claim for lack of subject matter jurisdiction. *See, e.g.*, *Tabor v. United States*, No. 22-CV-795, 2024 WL 4335601, at *6 (D. Conn. Sept. 27, 2024).

First, regarding the claims against the Federal Official Defendants in their official capacities, Plaintiff fails to sufficiently allege waiver of sovereign immunity. Interpreting the

claims as being brought under *Bivens* does not save the claims from dismissal as such claims "must be brought against the federal officers involved in their individual capacities." *Robinson*, 21 F.3d at 510; *see also Style v. McGuire*, No. 17-CV-502 (SRU), 2017 WL 3841647, at *5 (D. Conn. Sept. 1, 2017) (dismissing *Bivens* claims against the United States Marshals in their official capacities for lack of subject matter jurisdiction). Plaintiff alleges no statute that waives sovereign immunity. The Court therefore dismisses these claims for lack of subject matter jurisdiction.

Second, as to the claims against the USPS, the Court finds that such claims are precluded by *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994), where the Supreme Court explained that "[a]n extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself." Attempting to overcome the hurdle of sovereign immunity, Plaintiff alleges that his claims can proceed against the USPS under 39 U.S.C. § 409. But the text of that statute does not indicate that there is subject matter jurisdiction over claims against the USPS based on alleged interference with constitutional rights. Plaintiff's purported source of waiver of sovereign immunity states that "**[f]or purposes of the provisions of law cited in paragraphs (2)(A) and (2)(B)**, respectively, the Postal Service . . . shall not be immune under any other doctrine of sovereign immunity from suit in Federal court by any person for any violation of any of those provisions of law by any officer or employee of the Postal Service." 39 U.S.C. § 409(d)(1) (emphasis added). Paragraphs (2)(A) and (2)(B) subsequently state that:

> This subsection applies with respect to (A) the Act of July 5, 1946 (commonly referred to as the 'Trademark Act of 1946' (15 U.S.C. 1051 and following)); and (B) the provisions of section 5 of the Federal Trade Commission Act to the extent that such section 5 applies to unfair or deceptive acts or practices.

39 U.S.C. § 409(d)(2). Because Plaintiff does not bring claims under the Trademark Act of 1946 or the Federal Trade Commission Act, 39 U.S.C. § 409 does not waive the USPS's sovereign immunity in this action.

Therefore, the claims against the USPS and the Federal Official Defendants in their official capacities are dismissed for lack of subject matter jurisdiction. The Court thus proceeds to analyze whether the claims against the Federal Official Defendants in their individual capacities are barred by qualified immunity

> **b.  Qualified Immunity Bars The Constitutional Claims Against The Federal Official Defendants In Their Individual Capacities**

The Court also concludes that the Federal Official Defendants are entitled to qualified immunity as Plaintiff fails to plausibly allege that any of those individuals violated a clearly established right.

"Qualified immunity can shield defendants from constitutional claims where their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pal v. Canepari*, No. 23-730, 2024 WL 4341360, at *1 (2d Cir. Sept. 30, 2024) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017)). Qualified immunity warrants dismissal at the pleadings stage "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The relevant question is "whether a reasonable officer could have believed the [alleged conduct] to be lawful, in light of clearly established law and the information the . . . officers possessed."

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987). While qualified immunity is an affirmative defense, dismissal on that basis is appropriate when "the basis for finding qualified immunity applicable is established by the complaint itself." *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983).

Plaintiff fails to sufficiently allege that he has a "clearly established" right to be protected from retaliation for videotaping federal employees in a United States Post Office. Plaintiff alleges claims for First Amendment, Fourth Amendment, and Fourteenth Amendment violations in relation to being arrested, prosecuted, and given a "no trespass" order prohibiting him from returning to a Post Office as a result of his exercising his right to videotape officials, and alleges that those action constituted unlawful retaliation. While Plaintiff cites case law holding that police officers interfering with a person recording *police activity* is clearly established for qualified immunity purposes (FAC at 6 ¶ 15), Plaintiff cites no law pertaining to *postal officers* that would put postal officers on notice that they were violating clearly established law. Moreover, setting aside the conclusory allegations, Plaintiff does not allege that any of the Federal Official Defendants arrested Plaintiff (they are not alleged to be police officers), or that they were involved in his prosecution (they are not alleged to be prosecutors), or that they were personally involved in the issuance of the so-called "trespass order" banning Plaintiff from the Post Office. Instead, they are alleged to have intimidated Plaintiff by refusing him service, by asking him to delete his videos, and by calling 911. (FAC ¶ 17 (Defendant Santiago calling the West Hartford's 9-1-1 Emergency line to report a "troublemaker" who was filming her); *id.* ¶¶ 25, 26 (Defendant Darby and Madore telling Plaintiff to not videotape them and then calling the authorities); *id.* ¶ 120 (Defendant Selby requesting Plaintiff to delete the videos he had taken of the postal employees).) There are no allegations that the Federal

Official Defendants physically stopped Plaintiff from recording them, and the only reasonable inference is that Plaintiff did not stop videorecording until he was arrested. Plaintiff cites no authority that would have placed the Federal Official Defendants on notice that the alleged conduct, including calling 911 and asking a party to delete a video, violated a clearly established constitutional right.

Therefore, the Federal Official Defendants are entitled to qualified immunity, and the constitutional claims are dismissed for failure to state a claim.

### 3.    Municipal Defendants: WHPD Is Not A Suable Entity

As a preliminary matter regarding the Municipal Defendants, the Court concludes that Plaintiff cannot state a claim against the WHPD, which Plaintiff names as a defendant, because a "municipal police department is not an independent legal entity" that can be subject to suit under § 1983. *Villano v. Woodgreen Shelton, LLC*, No. 19-CV-97 (KAD), 2019 WL 4889013, at *2 (D. Conn. Oct. 3, 2019). While a "municipality" is subject to suit under § 1983, a police department, such as the WHPD, is not a "municipality." Rather, a police department "is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function." *Reed v. Hartford Police Dept.*, No. 03-CV-2147 (SRU), 2004 WL 813028, at *2 (D. Conn. Apr. 6, 2004). Therefore, because the WHPD is not subject to suit under § 1983, all claims against the WHPD are dismissed for failure to state a claim.

Consequently, the Court proceeds to analyze whether the claims against the remaining Municipal Defendants—Officer Campbell, Officer Swank, and the Town of West Hartford—are cognizable in this action.

D.     **False Arrest And Unreasonable Seizure (Count 1)**

Plaintiff's first cause of action alleges a § 1983 unreasonable seizure claim in connection with armed officers arresting Plaintiff on February 15, 2024, which the Court liberally construes as a false arrest claim. (FAC at 25–27.)

"District courts are encouraged to incorporate Section 1983 law into their assessment of *Bivens* claims because *Bivens* claims are very similar to claims brought under section 1983 'in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted.'" *Belton v. Wydra*, No. 17-CV-2006, 2019 WL 2162718, at *7 (D. Conn. May 17, 2019) (quoting *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)). Therefore, the Court will assess the claims for false arrest brought under *Bivens* against the Federal Official Defendants and the claims brought under § 1983 against the Municipal Defendants under Connecticut law. *Id.*; *see also Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (In determining the sufficiency of a section 1983 claim for false arrest, courts "look to the law of the state in which the arrest occurred."). Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another" and "[a]ny period of such restraint, however brief in duration, is sufficient to constitute a basis for liability." *Green v. Donroe*, 440 A.2d 973, 974 (Conn. 1982). Therefore, to prevail on a claim of false arrest, a plaintiff must plausibly allege that "his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 15-CV-726 (JCH), 2016 WL 777906, at *9 (D. Conn. Feb. 29, 2016) (quoting *Berry v. Loiseau*, 614 A.2d 414, 432 (Conn. 1992)). However, "a false arrest claim cannot lie when

the challenged arrest was supported by probable cause." *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007).

### 1.    Federal Defendants

While the Court holds that any constitutional claims against the Federal Official Defendants are barred by qualified immunity, the Court also finds that dismissal is warranted because Plaintiff has not alleged facts to make out a plausible claim of false imprisonment. Plaintiff has not alleged that his "physical liberty [had] been restrained" by any of the postal employees, a necessary element of a claim for false arrest. *Telkamp*, 2016 WL 777906, at *9. Instead, the Federal Official Defendants are alleged to have intimidated Plaintiff by refusing him service, by asking him to delete his videos, and by calling 911. (FAC ¶ 17 (Defendant Santiago calling the West Hartford's 9-1-1 Emergency line to report a "troublemaker" who was filming her); *id.* ¶¶ 25, 26 (Defendant Darby and Madore telling Plaintiff to not videotape them and then calling the authorities); *id.* ¶ 120 (Defendant Selby requesting Plaintiff to delete the videos he had taken of the postal employees).)

Therefore, Plaintiff's claim of false arrest against the Federal Official Defendants must be dismissed as not plausible.

### 2.    Municipal Defendants

Plaintiff has not plausibly alleged that either Officer Coleman or Officer Swank were personally involved in the alleged false arrest. Personal involvement can be shown through "intentional participation in the conduct constituting a violation of the victim's rights," *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001), as well indirectly participating in an unlawful arrest by declining to intercede on the victim's behalf. *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir.1982). While Plaintiff alleges that he was arrested for breach of peace in the second

degree on February 15, 2024, (FAC at 20 ¶ 67), there are no allegations showing that Officers Coleman or Swank arrested him or that they were aware of Plaintiff's arrest. There are also no facts alleged that would give rise to a reasonable inference that Officers Coleman and Swank were present at the scene of Plaintiff's arrest or that they directed another police officer to take Plaintiff into custody. Instead, the record reveals allegations fatal to Plaintiff's theory of liability, including that other individuals arrested Plaintiff after they were dispatched to the Post Office in response to multiple calls about Plaintiff's behavior. The Incident Report related to Plaintiff's arrest also shows that individuals not named in this action were involved with arresting Plaintiff. (ECF No. 94-2, at 2.) [2]

Therefore, Plaintiff's claim of false arrest against Officer Coleman and Officer Swank must be dismissed as not plausible.

### E.    Malicious Prosecution (Count 2)

Plaintiff, in his second cause of action, brings a malicious prosecution claim arising out of an alleged prosecution for breach of peace in the second degree. (FAC at 27–29.)

"[A] malicious prosecution claim brought pursuant to section 1983 or *Bivens* as a violation of the Fourth Amendment's right to be free from unreasonable seizures, is substantially the same as a claim for malicious prosecution under state law." *Belton*, 2019 WL 2162718, at *8 (collecting cases) (cleaned up). Therefore, "a plaintiff must show a violation

---

[2] In a motion to dismiss, the Court may consider a document "incorporated by reference" if the complaint "relies heavily upon its terms and effect" such that it is "integral to the complaint." *DiFolco v. MSNBC*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citation omitted). In his Amended Complaint, Plaintiff alleges that Officer Wallace entered a Case/Incident Report for his arrest. (FAC ¶ 78.) Plaintiff's complaint relies heavily on that report's terms and effects, stating that inconsistencies exist in the report, thus making it integral to the claims. *Id.*

of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'" *Friend v. Gasparino*, 61 F.4th 77, 85 (2d Cir. 2023) (quoting *Cornelio v. Connecticut*, 32 F.4th 160, 178 (2d Cir. 2022)). In Connecticut, "a malicious prosecution claim requires proof that (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Id.*

While the Court held that any constitutional claims against the Federal Official Defendants are barred by qualified immunity, the Court also finds that dismissal of the malicious prosecution claim against the individual Federal Defendants and Municipal Defendants is warranted for an additional reason: Plaintiff fails to sufficiently allege that any individual's actions resulted in malicious prosecution. To withstand a motion to dismiss, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff's Complaint, however, contains undifferentiated allegations as to the conduct of nine defendants. For instance, Plaintiff alleges that "Defendants chose to force Plaintiff to endure multiple court appearances and incur costs because USPS employees might feel threatened and possible criminal proceeding may result." (FAC at 28 ¶ 98.) Plaintiff also alleges that the "defendants caused criminal proceedings to be instituted and maintained against the Plaintiff; they did so with malice and without probable cause; the proceeding terminated in Plaintiff's favor and without conviction; Plaintiff was unlawfully seized as a result of the criminal proceedings; defendants' conduct caused Plaintiff's injuries; defendants acted under color of law. (FAC at

28–29 ¶ 100.) These statements do not allege which of the defendants engaged in activities that could plausibly show malicious prosecution. Grouping unaffiliated defendants and accusing all of the defendants in a conclusory manner, as is found here, is insufficient as Plaintiff is required to allege facts to state a claim against each defendant. Additionally, these allegations amount to nothing more than threadbare recitals of the elements of a cause of action. The Court notes again that other portions of the record undermine Plaintiff's claims, as they show that non-party individuals were involved with arresting Plaintiff for breach of peace. (ECF No. 94-2, at 2.). And there are no allegations to support a reasonable inference that the individual defendants asserted pressure on a prosecutor to commence the prosecution.

Therefore, due to the insufficiency of allegations establishing personal involvement of any of the named defendants, Plaintiff's malicious prosecution claim is dismissed as not plausible. *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 600 (E.D.N.Y. 2017) (collecting cases); *see also Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (similar).

### F.    Retaliation (Count 3)

Plaintiff's third claim includes alleges a retaliation claim under the First and Fourteenth Amendments in connection with armed officers arresting Plaintiff on February 15, 2024. (FAC at 29–31.)

#### 1.    Federal Defendants

While the Court held that any constitutional claims against the Federal Official Defendants were barred by qualified immunity, the Court also finds that dismissal is appropriate as Plaintiff fails to state a cognizable *Bivens* claim for retaliation.

Application of the two-step inquiry reveals that a *Bivens* remedy is unavailable for Plaintiff's claim of retaliation under the First Amendment and Fourteenth Amendment. First, the claim of retaliation here arises in a new context because it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 582 U.S. at 139. The constitutional right here very clearly deviates from alleging a Fourth Amendment false arrest claim, *Bivens*, 403 U.S. at 397, a Fifth Amendment sex-discrimination claim, *Davis v. Passman*, 442 U.S. 228 (1979), or an Eighth Amendment medical mistreatment claim, *Carlson v. Green*, 446 U.S. 14 (1980).

Finding that Plaintiff's claim arises in a new context, the Court then turns to whether any "special factors counsel[ ] hesitation in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 137 (quoting *Carlson*, 446 U.S. at 18). "[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Egbert*, 596 U.S. at 493 (cleaned up). As noted by the Federal Defendants, two alternative remedies are available to Plaintiff, including: (1) filing a grievance with the Office of the Inspector General for the United States Postal Service to report employee misconduct, and (2) filing an action under the Federal Tort Claims Act ("FTCA"). These alternative remedies indicate "a special factor counseling hesitation in extending *Bivens*." *Edwards v. Gizzi*, No. 20-CV-7371, 2022 WL 309393, at *8–9 (S.D.N.Y. Feb. 2, 2022).

Therefore, after applying the two-step *Bivens* inquiry, there is "reason to think that Congress might be better equipped to create a damages remedy," and the only conclusion is that the retaliation claims must be dismissed as not plausible. *Egbert*, 596 U.S. at 492.

### 2.    Municipal Defendants

As a preliminary matter, there are no assertions concerning any conduct of Officers Coleman and Swank that can be deemed retaliatory. Plaintiff asserts that his "actions on February 15, 2024 of expressing criticism of the defendant police officers, as well as in invoking his civil rights, as described above in more detail, are safeguarded by the First Amendment to the United States Constitution." (FAC at 29 ¶ 103.) Specifically, Plaintiff asserts that he has a constitutional right to record federal employees at the United States Post Office, noting that there is a "public's right of access to information about their officials [sic] public activities." (*Id.* at 2 ¶ 3.) But, as previously discussed, there are no facts alleged that would give rise to an inference that Officers Coleman and Swank were present at the scene of Plaintiff's arrest or that they directed another police officer to take Plaintiff into custody. While Plaintiff identified other dates on which Officer Campbell and Officer Swank interacted with him, Plaintiff does not allege that either officer interacted with him on February 15, 2024, the date of the alleged retaliation.

Even if Plaintiff sufficiently alleged that Officer Campbell and Officer Swank were personally involved with arresting Plaintiff, as discussed below, Plaintiff's retaliation claims brought under the First Amendment and Fourteenth Amendment are not plausible.

### a.    First Amendment

"Generally, the analysis of a First Amendment retaliation claim entails determining whether the plaintiff has shown that: (1) an interest protected by the First Amendment exists; (2) the defendants' actions were motivated or substantially caused by the plaintiff's exercise of that right; and (3) the defendants' actions effectively chilled (prevented from recurring) the plaintiff's exercise of that right." *Parsons v. Funchion*, No. 21-CV-1340 (VDO), 2024 WL

2862291, at *4 (D. Conn. June 6, 2024) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)). "The test is conjunctive: if all three prongs are not satisfied, then the claim fails." *Id.*

Additionally, Plaintiff has not plausibly alleged an interest protected by the First Amendment. Courts "analyze speech restrictions on publicly owned property according to a forum-based approach" and, where the alleged forum is classified as either (1) a traditional public forum; (2) a designated public forum; (3) a limited public forum; or (4) a non-public forum. *Tyler v. City of Kingston*, 74 F.4th 57, 61 (2d Cir. 2023). Here, Plaintiff seems to allege that individual WHPD police officers violated his First Amendment right to record federal employees inside a United States Post Office, which he alleges to be a public forum. (FAC at 18 ¶¶ 51, 54 (noting that there was corroboration of constitutionally protected activity where witnesses stated that Wozar was video recording inside the Post Office).) While Plaintiff alleges the legal conclusion that he was recording in a public area, the Court cannot credit that as the Second Circuit has previously held that the interior of a Post Office is a non-public forum. *See Longo v. United States Postal Service,* 983 F.2d 9, 11 (2d Cir.1992) (interior walkway of a Post Office in Connecticut was a non-public forum because that walkway was used "solely for the purpose of assisting patrons of the post office to get from the parking lot to the front door of the post office); *see also Moore v. U.S. Postal Serv.*, 159 F. App'x 265, 267 (2d Cir. 2005) (interior of Post Office was a non-public forum). "Inside a non-public forum, governmental restrictions on expressive conduct or speech are constitutional so long as they are reasonable in light of the use to which the forum is dedicated and 'are not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Washpon v. Parr*, 561 F. Supp. 2d 394, 408 (S.D.N.Y. 2008) (quoting *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 800 (1985)).

The Post Office has policies and regulations addressing videorecording at postal facilities that apply to Plaintiff. For example, 39 C.F.R. § 232.1 addresses "Conduct on postal property." Subsection (i), entitled "Photographs for news, advertising, or commercial purposes," provides as follows:

> Except as prohibited by official signs or the directions of security force personnel or other authorized personnel, or a Federal court order or rule, photographs for news purposes may be taken in entrances, lobbies, foyers, corridors, or auditoriums when used for public meetings. Other photographs may be taken only with the permission of the local postmaster or installation head.

39 C.F.R. § 232.1(i). But Plaintiff does not allege that he received permission from the local postmaster or installation head. Instead, Plaintiff was arrested after he disregarded multiple requests from postal employees to stop recording them. And where, as here, a no entry order is based on a party's disruptive behavior, and not because of the content of a plaintiff's expressive activities, that order limiting access to a Post Office is reasonable restriction. *Moore*, 159 F. App'x at 267 (collecting cases)

Therefore, because Plaintiff has not alleged a First Amendment right to record inside the Postal Office, this claim must be dismissed as not plausible.

### b.    Fourteenth Amendment

Under the Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim under the Fourteenth Amendment, there are two "distinct pathways for proving a non-class-based Equal Protection violation." *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019). The first pathway, "[a] selective enforcement claim[,] requires a demonstration that a person was treated differently than others similarly situated based on

impermissible considerations, such as race or religion." *Caldwell v. Geronimo*, No. 22-1866, 2023 WL 6381292, at *2 (2d Cir. Oct. 2, 2023). To prevail on a selective enforcement claim, a plaintiff must "prove that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at 91 (citing *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). "A selective enforcement theory merely requires a reasonably close resemblance between a plaintiff's and comparator's circumstances." *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159 (MPS), 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (cleaned up). The second pathway, a class of one claim, "also requires a comparator and a lack of rational basis for the differential treatment." *Caldwell*, 2023 WL 6381292, at *2. To prevail on a class of one claim, a plaintiff must prove that he is "*prima facie* identical" to a comparator by showing that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Hu*, 927 F.3d at 92.

Plaintiff does not plausibly allege a claim under the Fourteenth Amendment under either a selective enforcement theory or a class-of-one theory. Plaintiff has not alleged that any individual, let alone a similarly situated individual, was treated more favorably. Plaintiff's failure to plausibly allege the existence of similarly situated comparators precludes a reasonable inference that Defendants were "motivated by an intention to discriminate on the basis of impermissible considerations[.]" *Hu*, 927 F.3d at 91. "[T]he complete absence of any

alleged basis for equal protection violations, or reference to similarly situated people being treated differently, warrants the dismissal of this claim against all defendants." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 205 (E.D.N.Y. 2010). Therefore, this claim must be dismissed as not plausible.

### G.    Conspiracy (Count 4)

Plaintiff brings a civil conspiracy claim relating to the arrest and trespass order after he videotaped postal employees during his visits to a United States Post Office. (FAC at 31–36.)

#### 1.    Section 1985(3)

To state a conspiracy claim under 42 U.S.C. § 1985, a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (citation omitted). To show a conspiracy, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted). "Such a conspiracy is actionable under § 1985 only if it involves a discriminatory animus based on race or some other invidious classification." *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 419 (2d Cir. 1999).

Here, because Plaintiff fails to allege that the named defendants were motivated by any class-based, invidious discrimination, Plaintiff fails to state a claim under § 1985(3). Plaintiff alleges that he was arrested, transported, and incarcerated after he chose to express criticism

and assert his civil rights." (FAC at 32 ¶¶ 114–116.) But such conclusory allegations are insufficient to show that any defendant was motivated by any class-based, invidious discrimination. Indeed, Plaintiff does not allege that any of the defendants arrested him. Nor does Plaintiff allege that he is a member of a class that posses[es] . . . inherited or immutable characteristics sufficient to satisfy the class-based animus requirement" *Dolan*, 794 F.3d at 296. Therefore, Plaintiff fails to state a claim under § 1985(3).

### 2.    Section 1986

Plaintiff's claim under 42 U.S.C. § 1986 fails "because no § 1986 claim will lie where there is no valid § 1985 claim." *Posr*, 180 F.3d at 419. Therefore, because Plaintiff does not plausibly plead a § 1985 claim, he cannot plead a valid § 1986 claim and thus, it must be dismissed.

### H.    Municipal Liability (Count 6)

Plaintiff brings a *Monell* claim of municipal liability under § 1983 against the Town. (FAC at 36–37.)

While a municipality may be liable as a "person" under § 1983 for being "responsible for a deprivation of rights protected by the Constitution," a municipality cannot be held liable "*solely* because it employs a tortfeasor[.]" *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978). Instead, it may be sued under § 1983 "when execution of [the local] government's policy or custom . . . inflicts the injury[.]" *Id*. at 694. In the Second Circuit, a plaintiff bringing a *Monell* claim against a municipality must establish: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff satisfies the first element by showing one of the following: "(1) a formal policy officially endorsed by the

municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (collecting cases).

Plaintiff has identified neither a policy nor a custom sufficient to state a *Monell* claim. "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)

First, Plaintiff does not sufficiently plead a formal policy endorsed by the municipality. A plaintiff bringing a § 1983 claim need not meet a "heightened pleading requirement," *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993), but he may not rely solely on "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted); *see Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015). "Boilerplate language echoing the requirements contained in *Monell* will not survive a motion to dismiss and [a p]laintiff must provide detailed factual allegations showing the existence of these alleged policies." *Barnes v. City of New York*, No. 18-CV-7119 (AJN), 2020 WL 6947424, at *7 (S.D.N.Y. Nov. 25, 2020), *aff'd in part, vacated in part, remanded*, 68 F.4th 123 (2d Cir. 2023) (cleaned up) (quoting *Green,* 96 F. Supp. 3d at 302). Thus, to show a formal policy at this stage in the litigation, a plaintiff must allege "facts tending to support, at least

circumstantially, an inference that such a municipal policy or custom exists." *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (citing *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993)). "[E]xplicit factual allegations" must support any such inference. *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 258 (S.D.N.Y. 1999).

The Complaint refers to a "custom and practice of subjecting innocent citizens who are the subject of questioning to civil rights violations" by its continued employment of Officer Swank, who previously threatened to arrest Plaintiff. (FAC at 36–37.) But it is well-settled that a municipality cannot be held liable "*solely* because it employs a tortfeasor[.]" *Monell*, 436 U.S. at 691. And the allegations involving Officer Swank and Plaintiff do not save the *Monell* claim from dismissal because "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [Town]." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008).

Next, Plaintiff fails to show that the actions of a policymaking official created a policy that violated his constitutional rights. The Complaint simply includes conclusory allegations regarding the WHPD (FAC at 36–37), which, as discussed above, is an improper party to this lawsuit. Plaintiff makes no mention of policymaking officials or their conduct in the Complaint. The Court can only conclude that he has not shown a policy through "actions or decisions made by municipal officials with decision-making authority." *McLennon*, 171 F. Supp. 3d at 94. Though a plaintiff is not required to identify a set number of incidents to plausibly show a practice "of municipal officials . . . so persistent or widespread as to constitute a custom or usage with the force of law," *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015), a plaintiff cannot rely only on isolated incidents or conclusory language. *McLennon*, 171 F. Supp. at 95.

In his opposition to the Municipal Defendants' motion to dismiss, Plaintiff also asserts that he has established a policy or custom of discriminating against individuals exercising their First Amendment rights based on a theory of deliberate indifference. (ECF No. 103, at 1.) A plaintiff can base a deliberate indifference claim "upon a failure to train or a failure to supervise or discipline." *Buari v. City of New York*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021).

Plaintiff fails to assert sufficient facts to support a deliberate indifference claim under any theory. First, under a failure to train theory, a municipality may incur liability "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]" *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A plaintiff must identify a "specific deficiency in the [municipality's] training program," *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004), and a "*pattern* of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62 (emphasis added). Second, under a failure to supervise theory, a plaintiff establishes deliberate indifference when "the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). A plaintiff may plead "(1) that there was a pattern of allegations or complaints about similar unconstitutional activity and (2) that the municipality *consistently failed to investigate* those allegations" or "(1) that there was a pattern of actual similar constitutional violations and (2) the municipality *consistently failed to discipline* those involved." *Pettiford v. City of Yonkers*, No. 14-CV-6271 (JCM), 2021 WL 2556172, at *9 (S.D.N.Y. 2021) (citing *Tieman v. City of Newburgh*, No. 13-CV-4178 KMK, 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015)). Plaintiff's Complaint falls short of plausibly identifying a deficiency with the Town's training

program or plausibly showing that there was a pattern of any constitutional violations, as he only alleges facts supporting isolated incidents involving himself. (FAC at 36–37.) The remainder of the Complaint includes conclusory allegations that are insufficient to show deliberate indifference.

Therefore, Plaintiff's *Monell* claim is dismissed as not plausible.

## I.    **Federal Liability (Count 7)**

Count Seven, entitled "Federal Liability," purports to bring claims against the Federal Defendants for violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983. (FAC at 37–40.) As discussed above, Plaintiff's reliance on § 1983 is misplaced. But, even under a liberal construction of Plaintiff's Complaint, the Court finds that Plaintiff fails to state a claim as there are no recognized *Bivens* causes of action for alleged unlawful conduct under the First or Fourteenth Amendments, and special factors counsel against extending *Bivens* here. Moreover, sovereign immunity bars any claims against the USPS.

## IV.    <u>SUPPLEMENTAL JURISDICTION</u>

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because the Court dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 121–22 (2d Cir. 2006); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## V.    <u>**LEAVE TO AMEND**</u>

While leave to amend a complaint should be freely granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). The Second Circuit has cautioned that a *pro se* plaintiff should be provided the opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Moreover, under Federal Rule of Civil Procedure 16(b)(4), a party must show good cause to amend a pleading "if the motion is filed after the deadline imposed by the district court in its scheduling order." *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013). Good cause is found where the moving party has demonstrated diligence and the amendment would not significantly prejudice the non-moving party. *Id.*

The Court's scheduling order directed the parties to move to amend a pleading by July 9, 2024. (ECF No. 4.) Prior to that deadline, the Court granted leave for Plaintiff to amend his complaint in response to Defendants filing their motions to dismiss. (ECF No. 84.) Defendants objected to that request to amend on grounds that the proposed amendment would be futile. (ECF Nos. 77, 79.) Plaintiff thus had an opportunity to amend the complaint with full knowledge of Defendants' myriad arguments in favor of dismissal.

After the deadline to amend a pleading had passed, on September 3, 2024, Plaintiff requested leave to amend the Complaint again, asserting that "[i]f revision(s) are needed,

plaintiff should be granted ability to make said revisions as Defendants will only communicate in writing and they wait weeks to respond." (ECF No. 106, at 9.) Defendants opposed Plaintiff's request. (ECF Nos. 96-1 at 15, 97-1 at 34, 117 at 6, 118 at 7.) Plaintiff then filed another motion to amend the Complaint on December 27, 2024. (ECF No. 149.) Despite Plaintiff being on notice that noncompliance with the page limits prescribed by the Local Rules could result in documents being stricken from the docket, Plaintiff violated Local Rule 7(a)(5) by supplementing his request to amend, comprising thirty-three pages, with another filing comprising thirty-one pages. (ECF Nos. 83, 149, 154.)[3] Defendants again opposed Plaintiff's request to amend the Complaint. (ECF Nos. 156, 157.)

As an initial matter, the Court concludes that Plaintiff has not shown good cause to amend his complaint. Plaintiff has not shown justification for the belated requests to amend the Complaint and therefore, the Court finds that Plaintiff unduly delayed in seeking the amendment and was not diligent. Plaintiff's representation that Defendants take weeks to respond to correspondences does not show diligence as that purported delay does not prevent Plaintiff from timely filing a motion to amend. Even if there were good reasons for Plaintiff's failure to act more quickly, the Court finds that the proposed amendment is prejudicial as it would enlarge the time and expenses required by Defendants to defend this action. Indeed, since commencing this action and despite this case being at the pleadings stage, the plaintiff has aggressively filed requests for relief, including no fewer than six unmeritorious motions for sanctions against the defendants and defense counsel. (ECF Nos. 83, 125, 126.) A cursory

---

[3] Consistent with the Court's inherent authority to manage its docket and to enforce the Local Rules, the Court strikes Plaintiff's filing at ECF No. 154 for circumventing the page limits prescribed by Local Rule 7.

review of the filings in this case leaves no doubt that permitting an amended complaint would be time-consuming, burdensome, and expensive for the defendants.

The Court also concludes that another opportunity to amend the complaint would be futile because Plaintiff has not indicated "how further amendment would permit him to cure the deficiencies in the [amended] complaint." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 140 (2d Cir. 2011). The flaws in the Complaint as expressed herein rule out any possibility that Plaintiff would succeed in stating a claim by re-pleading. To illustrate, as for the claims against the Federal Defendants, it would be futile to replead facts in light of sovereign immunity, qualified immunity, and the Supreme Court's guidance restricting *Bivens* claims to very limited contexts, which are not present here.

As for the claims against the Municipal Defendants, it would be futile to replead facts against individuals that were not present at Plaintiff's arrest and otherwise not personally involved in violating his rights as alleged. This conclusion is further supported by Plaintiff's initial complaint, which includes judicial admissions that are fatal to his claims. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."). The initial complaint reveals that non-party individuals were involved with the alleged unlawful conduct here. For example, Plaintiff identified non-party McNiff as the individual who issued the trespass notice (ECF No. 1 at 27 ¶ 51.) It also included a case/incident report that identified non-party WHPD police officers as the ones who placed Plaintiff under arrest and completed the booking process on the date at issue, February 15, 2024. (*Id.* at 87 ("Shortly after this, Ofc. Wallace placed Mark under arrest and placed him in handcuffs that were checked for fit and double locked. I [Ofc. Kaselouskas] then searched

Mark incident to arrest for weapons and contraband, but found none. Ofc. Dickman and I [Ofc. Kaselouskas] then transported Mark to WHPD booking, where we completed the booking process without incident."). These allegations lead the Court to conclude that Plaintiff's claims against the Municipal Defendants fail as a matter of law.

## VI.    **CONCLUSION**

For the reasons stated above, Defendants' motions to dismiss is **granted**. Leave to file another amended complaint is **denied** on grounds of undue delay, significant prejudice to Defendants, futility, and failure to show good cause. The Complaint is dismissed in its entirety and as there are no remaining claims, the Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close the case. All other pending motions are denied as moot.

 

 

**SO ORDERED.**

Hartford, Connecticut
January 17, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge