### UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1  ### MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2  Case CIV No. TBD Document TBD Filed February 11, 2025 Page 1 of 40 Page ID #:  1

FEB 11 2025 PM 2:27
FILED-USDC-CT-HARTFORD

MARK WOZAR,
*Plaintiff*,

v.

CAMPBELL et al.,
*Defendants.*

Civil Action Number: TBD
Judges TBD

1  ## MOTION FOR CLARIFICATION, CORRECT THE RECORD, AND PRESERVE EVIDENCE
2
3  ## INTRODUCTION

4  1.  NOW COMES appellant, MARK WOZAR, pro se/proper person, and files this motion in

5  accordance with FRCP Rule 60(b). Legal conclusion devoid of any basis of fact from the ruling

6  ask that the offending passages be stricken from the record as they are devoid of any factual

7  support.

8  2.  In the previous decision Judge Oliver writes in part: at ECF #163

9  As the case is on appeal, the request to compel discovery is denied
10  because the Court no longer has jurisdiction. *See Griggs v. Provident*
11  *Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of
12  appeal is an event of jurisdictional significance it confers jurisdiction on
13  the court of appeals and divests the district court of its control over those
14  aspects of the case involved in the appeal.") The request for
15  reconsideration of the Court's Order dismissing the Amended Complaint is
16  denied because this Court has previously ruled on the merits of a
17  reconsideration motion filed by Plaintiff and a litigant is not permitted to
18  file successive motions for reconsideration. *See, e.g., Hamilton v. HSBC*
19  *Bank U.S.A. N.A.*, No. 19-cv-91, 2020 U.S. Dist. LEXIS 1283, 2020 WL
20  59935, at *1 (D. Conn. Jan. 6, 2020) ("[N]either the Bankruptcy Rules...
21  nor the local Rules of this Court... permit the filing of multiple motions
22  for reconsideration.").
23
24  and continues, in part, page 27 of ECF #158
25
26  The Post Office has policies and regulations addressing video
27  recording at postal facilities that apply to Plaintiff. For example, 39
28  C.F.R. § 232.1 addresses "Conduct on postal property." Subsection (i),

3  1 of 40
4  ### MOTION TO CLARIFY AND CORRECT THE RECORD

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1  MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2  Case CIV No. TBD Document TBD Filed February 11, 2025 Page 2 of 40 Page ID #:  2


1    entitled "Photographs for news, advertising, or commercial
2    purposes," provides as follows: Except as prohibited by official signs or
3    the directions of security force personnel or other authorized personnel, or
4    a Federal court order or rule, photographs for news purposes may be taken
5    in entrances, lobbies, foyers, corridors, or auditoriums when used for
6    public meetings. Other photographs may be taken only with the
7    permission of the local postmaster or installation head.
8
9    39 C.F.R. § 232.1(i). But Plaintiff does not allege that he received
10   permission from the local postmaster or installation head. Instead, Plaintiff
11   was arrested after he disregarded multiple requests from postal employees
12   to stop recording them. And where, as here, a no entry order is based on a
13   party's disruptive behavior, and not because of the content of a plaintiff's
14   expressive activities, that order limiting access to a Post Office is
15   reasonable restriction.
16
17   *Moore*, 159 F. App'x at 267 (collecting cases)
18
19  3.  As Judge Oliver has yet to provide guidance on what will constitute a trespass and what will

20  stimulate a trespass as antiquated case law (as new federal law and USPS) rules contradict it,

21  plaintiff, now appellant, asks this Court for guidance. What is appellant, and all persons in the

22  second circuit, allowed to do? Postal employees, postal policy, federal policies and WHPD

23  stated numerous times in the record, that is contradicted that Appellee is allowed to record in

24  the lobby but Judge Oliver's  provides enough ambiguity to subvert all of this.

25  4.  In the decision the Court writes, in part,

26   Officer Swank informed Plaintiff that he was requested to leave the
27   premises and, because he did not leave, the police officers have the
28   right to ask him for identification, to put him in handcuffs, and to take
29   him to jail
30
31  the Court seems to be operating from a mistaken premise as First Amended Complaint

32  ("FAC"), ECF No. 88, at 7 ¶ 19.), which states, in part,

**UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)**
1    **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 3 of 40 Page ID #: 3

1        Report #2400002960-00004360 contains factual errors. One of which is
2        found on page 1, last line, which reads, in part, "Officer Bowsky relayed to
3        me Teresa asked Mark to leave due to her feeling
4
5    5.    Plaintiff cannot find in any of the material where either Defendants have presented an

6    argument that the USPS personnel asked plaintiff to leave. Indeed, anticipating that this may be

7    an issue plaintiff under FOIA has requested ESI but that information has not been provided

8    despite requests to this Court.

9    6.    Indeed Judge Oliver has based his ruling in part on an antiquated and depreciated rule as

10    states in part:,

11        ***Photographs for news, advertising, or commercial purposes.*** Except as
12        prohibited by official signs or the directions of security force personnel or
13        other authorized personnel, or a Federal court order or rule, photographs
14        for news purposes may be taken in entrances, lobbies, foyers, corridors, or
15        auditoriums when used for public meetings. Other photographs may be
16        taken only with the permission of the local postmaster or installation head.
17
18                            **LEGAL STANDARD**

19    **Statues**

20    7.    The United States district courts are vested with exclusive original jurisdiction over FOIA cases

21    by section 5 U.S. Code § 552 - Public information; agency rules, opinions, orders, records, and

22    proceedings (a)(4)(B) of the Act, which provides in pertinent part:

23        On complaint, the district court of the United States . . . has jurisdiction to
24        enjoin the agency from withholding agency records and to order the
25        production of any agency records improperly withheld from the
26        complainant
27
28    and continues in part

29        **In such a case the court shall determine the matter de novo**, and may
30        examine the contents of such agency records in camera to determine
3                            3 of 40
4                    **MOTION TO CLARIFY AND CORRECT THE RECORD**

**UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)**
1  **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2  Case CIV No. TBD Document TBD Filed February 11, 2025 Page 4 of 40 Page ID #: 4

1      **whether such records or any part thereof shall be withheld under any**
2      **of the exemptions set forth in subsection (b) of this section, and the**
3      **burden is on the agency to sustain its action.** (emphasis added)
4
5  and, for the purposes of this motion concludes with 522(a)(b)(12) that states "pursuant to

6  the order of a court of competent jurisdiction" and/or duty preserve evidence via a receipt of a

7  litigation hold letter.

8  **Litigation hold letter**

9      8.      [A] duty to preserve evidence 'arises when the party has notice that
10      the evidence is relevant to litigation or when a party should have known
11      that the evidence may be relevant to future litigation.' *Zubulake v. UBS*
12      *Warburg LLC ("Zubulake IV"),*220 F.R.D. 212, 216 (S.D.N.Y. 2003)
13      (quoting *Fujitsu Ltd v. Federal Express Corp.,*247 F.3d 423, 436 (2d Cir.
14      2001)).

15      *Siani v. State University of New York at Farmingdale*, CV09-407 (JFB)
16      (WDW), 2 (E.D.N.Y. Aug. 10, 2010)

17

18      9.      'The Second Circuit has interpreted the 'in anticipation of
19      litigation' requirement broadly.' *Wultz v. Bank of China Ltd.* , 979 F. Supp.
20      2d 479, 488 (S.D.N.Y. 2013) ; *see also*A. Michael's Piano, Inc. v.
21      *F.T.C.* , 18 F.3d 138, 146 (2d Cir. 1994) ('The courts have taken a flexible
22      approach in determining whether the work product doctrine is applicable,
23      asking not whether litigation was a certainty, but whether the document
24      was created 'with an eye toward litigation.' ') (quoting *Hickman,*329 U.S.
25      at 511, 67 S.Ct. 385 ).

26      *Klosin v. E.I. du Pont de Nemours and Company*, 561 F. Supp. 3d 343,
27      356 (W.D.N.Y. 2021)

28      10.     While a government investigation itself may not amount to
29      litigation, "[m]any courts have held ... that once a governmental
30      investigation has begun, litigation is sufficiently likely to satisfy the
31      'anticipation' requirement." *In re Grand Jury Subpoena* , 220 F.R.D. 130,
32      147 (D. Mass. 2004) (citing *Martin v. Bally's Park Place Hotel &*
33      *Casino,*983 F.2d 1252, 1261 (3d Cir. 1993)

34      *Klosin v. E.I. du Pont de Nemours and Company*, 561 F. Supp. 3d 343,
35      356-57 (W.D.N.Y. 2021)

11.     Once the duty to preserve arises, a litigant is expected, at the very least, to 'suspend its routine document and retention/destruction policy and to put in place a litigation hold.' *Zubulake IV,*220 F.R.D. at 218; *see also Doe v. Norwalk Cmty Coll.,*2007 U.S. Dist LEXIS 51084, at \*14 (D. Conn. July 16, 2007) (a party needs to take affirmative acts to prevent its system from routinely destroying information).

*Siani v. State University of New York at Farmingdale*, CV09-407 (JFB) (WDW), 9 (E.D.N.Y. Aug. 10, 2010)

12.     [S]poliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' *West v. Goodyear Tire Rubber Co.,*167 F.3d 776, 779 (2d Cir. 1999). If the evidence is relevant to a party's claim, its spoliation 'can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.' *Zubulake v. UBS Warburg LLC ("Zubulake V),*229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting *Kronisch v. United States,*150 F.3d 112, 126 (2d Cir. 1998)).

*Siani v. State University of New York at Farmingdale*, CV09-407 (JFB) (WDW), 8 (E.D.N.Y. Aug. 10, 2010)

13.     'A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a `culpable state of mind' and (3) that the destroyed evidence was `relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.' *Zubulake V,* 229 F.R.D. at 430. An adverse inference based on spoliation is considered to be an extreme sanction, which 'should not be imposed lightly.' *Scalera v. Electrograph Systems, Inc.,* 262 F.R.D. 162, 171 (E.D.N.Y. 2009). Determination of the appropriate remedy for spoliation is committed to the discretion of the trial judge. *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001).")

*Siani v. State University of New York at Farmingdale*, CV09-407 (JFB) (WDW), 8-9 (E.D.N.Y. Aug. 10, 2010)

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1    MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 6 of 40 Page ID #: 6

1    **Applicable United States Code Sections**

2    14. In accordance with 5 U.S. Code § 552 - Public information; agency rules, opinions, orders,

3    records, and proceedings (a)(3)(A)

4    each agency, upon any request for records which (i) reasonably describes
5    such records and (ii) is made in accordance with published rules stating
6    the time, place, fees (if any), and procedures to be followed, **shall make**
7    **the records promptly available to any person.** (emphasis added)
8
9    and (a)(4)(C) enforce the requirement for the USPS to provide an answer as the Act states, in

10   part:

11   the defendant shall serve an answer or otherwise plead to any complaint
12   made under this subsection within thirty days after service upon the
13   defendant of the pleading in which such complaint is made, unless the
14   court otherwise directs for good cause shown.
15
16   15. Although 5 U.S.C. § 552(b) outlines the exemptions to the FOIA and the Postal Reorganization

17   Act (at 39 USC 410(c)(2)) exempts the USPS from FOIA disclosure of "information of a

18   commercial nature, including trade secrets, whether or not obtained from a person outside the

19   Postal Service, which under good business practice would not be publicly disclosed", FoIA's

20   statutory language, as the Supreme Court ruled in *Kissinger v. Reporters Committee for*

21   *Freedom of the Press* (*Kissinger v. Reporters Committee*, 445 U.S. 136 (1980)), makes federal

22   jurisdiction dependent upon a showing that an agency has (1) "improperly,"[1] (2) "withheld,"[2] (3)

---

1    See *DOJ v. Tax Analysts*, 492 U.S. 136, 145 (1989) (finding that agency must be in control of records requested when
FOIA request made and "[b]y control [the court] mean[s] that the materials have come into the agency's possession in
the legitimate conduct of its official duties")

2    The act described by this word presupposes the actor's possession or control of the item withheld. A refusal to resort to
legal remedies to obtain possession is simply not conduct subsumed by the verb "withhold."

The Act and its legislative history do not purport to define the word. An examination of the structure and purposes of the
Act, however, indicates that Congress used the word in its usual sense. An agency's failure to sue a third party to obtain
possession is not a withholding under the Act.

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1   MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2   Case CIV No. TBD Document TBD Filed February 11, 2025 Page 7 of 40 Page ID #: 7

1    "agency records."

2           16.    Although Congress has supplied no definition of agency records in
3           the FOIA, it has formulated a definition in other Acts. The Records
4           Disposal Act, in effect at the time Congress enacted the Freedom of
5           Information Act, provides the following threshold requirement for agency
6           records:
7
8           'records' includes all books, papers, maps, photographs, machine readable
9           materials, or other documentary materials, regardless of physical form or
10          characteristics, *made or received* by an agency of the United States
11          Government under Federal law or in connection with the transaction of
12          public business. . . . 44 U.S.C. § 3301. (Emphasis in original.) (*Forsham
13          v. Harris*, 445 U.S. 169, 183 (1980))
14
15          17.    Two requirements emerge from *Kissinger* and *Forsham*, each of
16          which must be satisfied for requested materials to qualify as 'agency
17          records.' First, an agency must 'either create or obtain' the requested
18          materials 'as a prerequisite to its becoming an `agency record' within the
19          meaning of the FOIA..' *Id.*, at 182. In performing their official duties,

_____

Several sources suggest directly that agency possession or control is prerequisite to triggering any duties under the FOIA. In the debates, the Act was described as ensuring "access to the information *possessed* by [Government] servants." (Emphasis added.) 112 Cong.Rec. 13652 (1966), reprinted in Freedom of Information Act Source Book, S. Doc. No. 93-82, p. 69 (1974) (remarks of Rep. Monagan) (hereinafter Source Book I).

Following FOIA's enactment in 1966, the Attorney General issued guidelines for the use of all federal departments and agencies in complying with the new statute. The guidelines state that FOIA

"refers, of course, only to records in being and in the possession or control of an agency. . . . [It] imposes no obligation to compile or procure a record in response to a request."

Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act 23-24 (June 1967), Source Book I, pp. 222-223.

3    Most courts which have considered the question have concluded that the FOIA is only directed at requiring agencies to
4    disclose those "agency records" for which they have chosen

5    Page 445 U. S. 152

6    to retain possession or control. [Footnote 6] *See also NLRB v. Robbins Tire & Rubber Co.,* 437 U. S. 214, 437 U. S.
7    221 (1978), describing the Act as reaching "records and material in the possession of federal agencies. . . ."

8    The conclusion that possession or control is a prerequisite to FOIA disclosure duties is reinforced by an examination of
9    the purposes of the Act. The Act does not obligate agencies to create or retain documents; it only obligates them to
10   provide access to those which it, in fact, has created and retained.

11   (Kissinger v. Reporters Committee, 445 U.S. 136 (1980))
12                                    7 of 40
13                    MOTION TO CLARIFY AND CORRECT THE RECORD

1  agencies routinely avail themselves of studies, trade journal reports, and
2  other materials produced outside the agencies both by private and
3  governmental organizations. See *Chrysler Corp.* v. *Brown*, 441 U.S. 281,
4  292 (1979). To restrict the term 'agency records' to materials generated
5  internally would frustrate Congress' desire to put within public reach the
6  information available to an agency in its decision-making processes.
7  See *id.*, at 290, n. 10. As we noted in *Forsham*, "The legislative history of
8  the FOIA abounds with . . . references to records *acquired* by an
9  agency." 445 U.S., at 184 (emphasis added).

10 Second, the agency must be in control of the requested materials at the
11 time the FOIA request is made. By control we mean that the materials
12 have come into the agency's possession in the legitimate conduct of its
13 official duties. This requirement accords with *Kissinger*'s teaching that the
14 term "agency records" is not so broad as to include personal materials in
15 an employee's possession, even though the materials may be physically
16 located at the agency. See 445 U.S., at 157. This requirement is suggested
17 by *Forsham* as well, 445 U.S., at 183, where we looked to the definition
18 of agency records in the Records Disposal Act, 44 U.S.C. § 3301. Under
19 that definition, agency records include "all books, papers, maps,
20 photographs, machine readable materials, or other documentary materials,
21 regardless of physical form or characteristics, made or received by an
22 agency of the United States Government *under Federal law or in*
23 *connection with the transaction of public business* . . . ." *Ibid.* (emphasis
24 added). Furthermore, the requirement that the materials be in the agency's
25 control at the time the request is made accords with our statement
26 in *Forsham* that the FOIA does not cover "information in the
27 abstract." 445 U.S., at 185. (*Department of Justice v. Tax Analysts*, 492
28 U.S. 136, 144-46 (1989))

29
30 18. Per 44 U.S. Code § 3301 - Definition of records, section (a)(1)"the term "records""(A)

31 includes all recorded information, regardless of form or characteristics,
32 made or received by a Federal agency under Federal law or in connection
33 with the transaction of public business and preserved or appropriate for
34 preservation by that agency or its legitimate successor as evidence of the
35 organization, functions, policies, decisions, procedures, operations, or
36 other activities of the United States Government or because of the
37 informational value of data in them
38
39 19. In accordance with

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1    MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 9 of 40 Page ID #: 9

1    [t]he Federal Records Act of 1950, 44 U.S.C. § 2901 *et seq.,*[that]
2    authorizes the 'head of each Federal agency' to establish a 'records
3    management program's and to define the extent to which documents are
4    'appropriate for preservation' as agency records. The records management
5    program requires that adequate documentation of agency policies and
6    procedures be retained. The Records Disposal Act, a complementary
7    records management Act, provides the exclusive means for record
8    disposal. 44 U.S.C. § 3314. (Kissinger v. Reporters Committee, 445 U.S.
9    136 (1980) at *Page 445 U. S. 147 )
10
11   20. FOIA lawsuits are adjudicated according to standards and procedures that are quite atypical

12   within the field of administrative law. First, the usual "substantial evidence" standard of review

13   of agency action is replaced in the FOIA by a de novo review standard. (*Halpern v. Federal*

14   *Bureau of Investigation*, 181 F.3d 279 (2d Cir. 1999) at *289) Second, the burden of proof is on

15   the defendant agency, which must justify its decision to withhold any information as precedent

16   states in part:

17   [t]he Freedom of Information Act, and the judicial decisions which
18   interpret and apply it, evidence a strong public policy in favor of public
19   access to information in the possession of federal agencies.
20   See *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48
21   L.Ed.2d 11 (1976); *E. P. A. v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d
22   119 (1973). In keeping with this policy, the FOIA clearly specifies that
23   when an agency withholds requested information "the burden is on the
24   agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). (*Brown v. Federal*
25   *Bureau of Investigation*, 658 F.2d 71, 73 (2d Cir. 1981))
26
27   21. Lastly, precedent provides action for improper record removal as
28
29   the Federal Records Act establishes only one remedy for the improper
30   removal of a 'record' from the agency. The head of the agency is required
31   under 44 U.S.C. § 3106 to notify the Attorney General if he determines or
32   'has reason to believe' that records have been improperly removed from
33   the agency. The Administrator of General Services is obligated to assist in
34   such actions. 44 U.S.C. § 2905. At the behest of these administrators, the
35   Attorney General may bring suit to recover the records. (*Kissinger v.*
36   *Reporters Committee,* 445 U.S. 136 (1980) at *Page 445 U. S. 148)
3    9 of 40
4    MOTION TO CLARIFY AND CORRECT THE RECORD

**UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)**
1    **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 10 of 40 Page ID #:  10

1
2                                **PRECEDENTS**

3        22.    The Second Circuit has recognized a right as clearly established
4    where the decisions of other circuits form a "robust consensus of
5    persuasive authority." Higginbotham v. City of New York, 105 F. Supp. 3d
6    369,380 (S.D.N.Y. 2015). The Second Circuit has explained that, even if
7    the circuit has not explicitly held a governmental official's conduct to be
8    unconstitutional, "the course of conduct will nonetheless be treated as
9    clearly established if decisions by this or other courts clearly foreshadow a
10   particular ruling on the issue." Scott v. Fischer, 616 F. 3d 100, 105 (2d Cir.
11   2010) (quoting Varrone v. Bilotti, 123 F.3d 75, 79 (2d Cir. 1997)).
12   Further,"clearly established," for purposes of qualified immunity, "does
13   not require a case on point concerning the exact permutation of facts that
14   state actors confront in order to establish a clear standard for their
15   behavior." Hancock v. Cnty. of Rensselaer, 882 F.3d 5 8, 69 (2d Cir. 2018).
16
17       23.    According to the Fourth Circuit, "it is crystal clear that the First
18   Amendment protects peaceful nondisruptive speech in an airport, and that
19   such speech cannot be suppressed solely because the government disagrees
20   with it." *Tobey v. Jones*, 706 F.3d 397, 391 (2013). Here, Dyer sought to
21   record, from about ten feet away, the TSA conducting a pat-down search of
22   his husband. The TSA agents directed him to stop. Dyer's allegations fall
23   squarely within this "crystal clear" right. *See Glik*, 655 F.3d at
24   85 (explaining "the brevity of the First Amendment discussion" in many
25   "circuit court opinions that have recognized a right to film government
26   officials or matters of public interest in public space" as evidence of "the
27   fundamental and virtually self-evident nature of the First Amendment's
28   protections in this area"); *see also Sorrell v. IMS Health Inc.*, 564 U.S.
29   552, 568 (2011) ("An individual's right to speak is implicated when
30   information he or she possesses is subjected to 'restraints on the way in
31   which the information might be used' or disseminated."). Thus, because "a
32   general constitutional rule" "applies with obvious clarity" to the First
33   Amendment violations that Dyer alleges, the right he asserts was "clearly
34   established" at the time of the alleged conduct. *Booker*, 855 F.3d at
35   543 (alterations omitted) (quoting *Hope*, 536 U.S. at 741).

36       *Dyer v. Smith*, Civil Action No. 3:19-cv-921, 15 (E.D. Va. Feb. 23, 2021)

37
38                                  **FACTS**

39   24. USPS authored, the Administrative Support Manual (ASM) 13, July 1999 Updated Through

4    **MOTION TO CLARIFY AND CORRECT THE RECORD**

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1   **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2   Case CIV No. TBD Document TBD Filed February 11, 2025 Page 11 of 40 Page ID #: 11

1   January 61, 2020). The ASM at page 80 includes provisions for maintaining the "Closed Circuit

2   Television System Security"policy; 273.172 Policy, which in part, states:

3       The Postal Service uses CCTV systems for the protection of its
4       employees, mail, and postal assets, and to monitor automated mail flow
5       operations. The purpose of CCTV systems is to provide visual
6       verification in conjunction with intrusion detection devices or exit alarms
7       and doors equipped with exit alarms or access control devices. CCTV
8       systems are to function as deterrents, and **if a crime occurs in the**
9       **monitored area, to record evidence of it**. The administrative and
10      security uses of CCTV systems are limited to the following:
11
12          a. **CCTV systems are installed to view parking lots, building**
13          **exteriors, employee and visitor entrances, other access controlled**
14          **entrances, emergency egress only, Post Office box areas, public**
15          **access areas, and designated high-value locations, such as registry**
16          **areas**.
17          b. CCTV systems are not installed to view work areas to evaluate the
18          performance of employees.
19          c. **CCTV systems do not utilize "dummy" or nonfunctioning**
20          **CCTV cameras**.
21          d. **Security in the postal retail store** (emphasis added)
22
23  and continues, in part, with policy, 273.173 Responsibility, stating on page 80 and continuing

24  through page 81

25      Security Control Officer — The security control officer (SCO) is
26      responsible for overseeing the procurement, installation, maintenance, and
27      repair of CCTV systems, and for **maintaining a minimum of the most**
28      **recent 32 days of video recording tapes or disks**. **The SCO also assures**
29      **that the information from the CCTV camera is monitored and/or**
30      **properly recorded 24 hours a day.** At least once a year, one-third of the
31      tapes must be replaced (emphasis added)
32
33  25. Defendant Selby: "He's [Plaintiff] video taping her. [Defendant Santiago] Last week we had a minor

34  misconstrue-thing and I had to defuse that. I asked him to delete that. Now he's video taping her .. asked

35  him plenty of times to delete it...I **don't want her feel to threatened by this** guy!"(emphasis added)

Per Axon_Body_3_ Video_2024-01-19 1617 X60A39328 from about 31:43 about to 32:16 relative

record-time or 16:48:35 from to about 16:49:09 local time on 19 January, 2024. This event was in both

the Post Office box area and postal retail store.

26. Shelby's state-of-mind and incorrect law understanding per Axon_Body 3 _ Video_2024-01-19

1622 X60A3269C from about 16:07 about to 15:33 relative record time or 16:38:15 from to

about 16:38:25 local time on 19 January, 2024

- Defendant Selby: "Don't videotape my employee again please"
- Defendant Selby: "You have to understand this is a federal building; you can't come in and video tape employees" Defendant Selby: "Can you delete that right now? Delete it right now. Take out your phone and delete it right now."

This event was in both the Post Office box area

27. As per the defense judicial admissions as contained in the stipulated factual allegations

contained in ECF#s 108 and 109 pages 9 -54 of plaintiffs motion, On 9 February 2024, at

approximately 10:20, AM EST, Defendants Darby and Madore confronted Plaintiff as he was

walking in a parking lot; during the interaction, the Defendants were physically and verbally

intimidating breaking published USPS policy as documented in the uncontested motion for

certification of digital evidence, ECF #61, page 18, lines 1 to 18, which states in part:

- Defendant Madore: "Please don't video tape me!"
- Plaintiff: "Ma'am your in public. I'm going in."
- Defendant Madore: "I don't wanna be video taped"
- Plaintiff: "You are in public, madam"
- Defendant Madore: inaudible "or I will. That's fine."
- Plaintiff: "Please do whatever you need"
- Defendant Madore: "That's fine. Please don't video tape me. He's just walking and video taping me! I **don't care that** I **am in public"**
- Plaintiff: "You are in public; you are in public; you are in public; you have no expectation of privacy"

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1    MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 13 of 40 Page ID #: 13

1    ■ Defendant Darby: in snarky tone: "OK. .. have a good day sir"
2    ■ Plaintiff: "Thank you sir."
3    ■ Defendant Darby: "Keep going"
4    ■ Plaintiff: "Sir, I do not appreciate your tone sir"
5    ■ Defendant Darby: "I don't appreciate your tone; you just keep going"
6    ■ Defendant Madore: "I'm not doing it! He [Plaintiff] already tried to get in Todd's office,
7       somehow! He's videotaping me because I am going to call on you he's harassing me! So
8       please leave me alone, thank you. Have a good day."
9
10   This encounter happened in public parking lot.

11   NOTE: WHPD have this audio/video in evidence.

12   28. As per the defense judicial admissions as contained in the stipulated factual allegations

13   contained in ECF#s 108 and 109 pages 9 -54 of plaintiffs motion and cross-referenced by

14   Defendant Madore's 15 February 2024, at approximately 11:42 AM, EST, admission that USPS

15   management via Postal Inspectors "told" her not to provide any information – to include videos

16   and/or other records – as documented in the uncontested motion for certification of digital

17   evidence, ECF #61, page 47, paragraph 87, lines 7 to 32 but also from about 14:20 to 15:29 of

18   the (Extraction_l. l)_Axon_Body_3_ Video_2024-02-15 _ 113 _X60A33 84C body camera file,

19   which also has been accepted as digital evidence. This dialog excerpt shows that USPS knew of

20   the litigation hold letter and made a decision "above [her] pay grade" of 12 Crossroads Plaza

21   "boss" to provide nothing to the Plaintiff that states:

22   ○ Defendant Madore: "So they [the post office clerks] said he [the Plaintiff] wanted to speak
23      to Plaintiff and I said...this was last week...and I said,'Alright, can I help you?' And he's
24      videotaping Plaintiff and he goes...he handed it [the litigation hold letter] OK and he goes I
25      want the footage from your phone and looked over, right, I got the camera apparently this is
26      me...you can see I am just walking, right. I always walk with my phone cause I'm the boss
27      and he goes 'I want the footage from your phone.' I said, 'footage from my phone?' and he
28      said 'Yeah, you were videotaping me.' First, of all, I wasn't. Second, of all, **I'm not giving
29      you anything!** I said, 'Thank you have a nice day.' 'So, you received it, right; you received

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1    MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 14 of 40 Page ID #:  14

1    it.' And I just went on my way," (emphasis added)
2    ○ Officer Wallace: "Hmm...k"
3    ○ Defendant Madore: "Yeah"
4    ○ Officer Wallace: "So...Whenever you guys get that footage"
5    ○ Defendant Madore: "Yep"
6    ○ Officer Wallace: "ASAP"
7    ○ Defendant Madore: "Yeah; yeah"
8    ○ Officer Wallace: "Give me a call"
9    ○ Defendant Madore: "Absolutely"
10   ○ Officer Wallace: "You can call the routine line; and just ask; this is the case number from
11   the incident"
12   ○ Defendant Madore: "And I can give this to the inspectors also?"
13   ○ Officer Wallace: "Yep; if you wanna make a copy of that; do what ever you need to do. We
14   already have this; do what ever you have to do. You can keep this."
15   ○ Defendant Madore: "OK, good. **They** [the postal inspector[s]] **told me I'm not allowed to**
16   **give anything anyway; even if I wanted was trying** to....(inaudible) The inspector said
17   **'you don't give anything ever; you don't give correspondence ever! It's above my pay**
18   **grade.**)"
19
20   29. As per the defense judicial admissions as contained in the stipulated factual allegations

21   contained in ECF#s 108 and 109 pages 9 -54 of plaintiffs motion and cross-referenced by

22   Defendant Madore's on 9 February 2024, at approximately 10:34, AM, EST, Defendants

23   Campbell, Madore, and Darby start their "meeting of the minds" as they co-mingle in their

24   collective disdain for First Amendment champions but also acknowledging the activity is legal;

25   Defendant Campbell's remark, "We're familiar with this individual; he comes into the [WHPD]

26   lobby and record" and Defendant Madore comment "If he wants to record, that's one thing."

27   may be found at _Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-

28   09_1031_X60A35469 starting at about 3:37 and ending at about 3:49

29   30. On 9 February 2024, at approximately 10:29, AM, EST, Defendant Madore called the West

30   Hartford 9-1-1 call line, as memorialized from about 43 seconds to about 46 seconds into the

wave file 0_911_POS_1_2024_02_09_10_24_28_by_Start_Time_desc.wav. She stated, in part,

"He [the Plaintiff] said he got a lawyer. He's trying to su...make a big deal."

31. On 9 February 2024, at approximately 10:31, AM, EST, Defendants Campbell, Madore, and

Darby, began their "meeting of the minds"; during this meeting which may be cross-referenced

on (Extraction_l. l)_Axon_Body_3_ Video_2024-02-15 _ 113 _X60A33 84C body camera file

Defendant Madore stated plaintiff will "sue".

32. On 9 February 2024, at approximately 10:35, AM, EST, Defendants Campbell, Madore, the

unnamed Newington supervisor, and Darby continue their "meeting of the minds"; Defendant

Campbell's remark, "I'm very used to people coming up with a phone and go like this; it's just

part of it, right" and Defendant Madore's remark. "Yeah" is quickly countered by Defendant

Campbell's response, "He's in a public place." Defendant Campbell continues asking

Defendants Darby and Madore about signage, access, and Plaintiff's movements; this

conversation may be verified at_Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-

02-09_1031_X60A35469 starting at about 3:49 and ending at about 5:15

33. On 9 February 2024, at approximately 10:36, AM, EST, Defendants Campbell, Madore, the

unnamed Newington supervisor, and Darby continue their "meeting of the minds"; Defendant

Campbell's remark, "He's within reason going to be doing things that are not illegal." Is

accepted by Defendant Madore via her saying "Right.". This conversation may be verified at:

_Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469

starting at about 5:16 and ending at about 5:21

34. On 9 February 2024, at approximately 10:36, AM, EST, Defendants Campbell, Madore, the

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1 MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2 Case CIV No. TBD Document TBD Filed February 11, 2025 Page 16 of 40 Page ID #: 16

1    unnamed Newington supervisor, and Darby continue their "meeting of the minds"; Defendants'

2    dialog, which confirms that Plaintiff stayed in publicly accessible areas and Defendant Darby

3    answers more knowledgeably about public spaces when compared to Defendant Madore, may

4    be validated using_Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-

5    09_1031_X60A35469 starting at about 5:30 and ending at about 5:48

6    ○  Defendant Campbell: "Hear me out with what I am trying to say first. Did he go into any
7       spot that is clearly marked that is not accessible to the public; that's something where an
8       average citizen couldn't just walk-up and go into and have it be something where there is a
9       sign like no trespassing past this point? Is there anything like that?"
10   ○  Defendant Madore: "I don't know"
11   ○  Defendant Darby: "No"
12   ○  Defendant Madore: "Do we have anything like that?"
13   ○  Defendant Darby: "No"

14   35. On 9 February 2024, at approximately 10:37, AM, EST, Defendants Campbell, Madore, the

15   unnamed Newington supervisor, and Darby continue their "meeting of the minds"; Defendants'

16   dialog (below) turns to denying Plaintiff's Constitutional rights because of how they feel, may

17   be validated using _Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-

18   09_1031_X60A35469 starting at about 6:40 and ending at about 7:11

19   ○  Defendant Madore: "Employees only"
20   ○  Unknown male letter carrier (male) 2: "So we have a right to make like a restraining order
21      for that guy to not come into the post office."
22   ○  Unknown male letter carrier (male) 2, shaking his pointed hand in a deliberate/manner:
23      **"YES!"**
24   ○  Unknown male letter carrier (male) 2: "Because **we feel treated,** you know by that guy!"
25   ○  Defendant Madore: "Threatened you mean"
26   ○  Unknown male letter carrier (male) 2: "Yeah exactly! So I don't feel comfortable with that
27      guy coming over here"
28   ○  Defendant Campbell: "When he walks up to you and did he when had his [inaudible] did he
29      say anything to you? When he he"
30   ○  Defendant Mador, interrupting: "He did when he talked to one of my employees"
3    16 of 40
4    MOTION TO CLARIFY AND CORRECT THE RECORD

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1  **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2  Case CIV No. TBD Document TBD Filed February 11, 2025 Page 17 of 40 Page ID #: 17

1  ○  Defendant Campbell: "Could I please; you know ma'am; could I please talk to this
2  gentleman one on one for a second? Yeah. Just one. Sir, actually I wanted to talk to you for
3  a second. He walked up to you."
4  ○  Defendant Darby: "Yeah"
5  ○  Defendant Campbell: "He walked up to you and made you feel uncomfortable. Could I talk
6  to you privately; one on one?"
7
8  Defendants' dialog (below) turns to denying Plaintiff's Constitutional rights because of how

9  they, postal employees, feel, may be validated using

10  Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469

11  starting at about 7:20 and ending at about 7:40

12  ○  Unknown male letter carrier (male) 2: "I'm sorry; I'm [inaudible]; I'm the supervisor at the
13  other office "
14  ○  Defendant Campbell: "Yeah"
15  ○  Unknown male letter carrier (male) 2: "We had this situation before."
16  ○  Defendant Campbell: "OK"
17  ○  Unknown male letter carrier (male) 2: "And we submit; that was in Newington. So that we
18  submit like a restraining order for this person"
19  ○  Defendant Campbell: "Like a; like a; like a trespass warning"
20  ○  Unknown male letter carrier (male) 2: "Exactly"
21  ○  Defendant Campbell: "That's what you're trying to say; I understand. Just give me a second.
22  Because when I feel like when I am trying to talk I have multiple people taking at Plaintiff
23  and its not it's not working for me"
24
25  During the interaction of the "meeting of the minds", the unnamed individual stated, his

26  Draconian goal: feelings trump everyone's constitutional rights. To arrive at his Machiavellian

27  end of no hurt worker feelings for workers in the post office at 12 Crossroads Plaza, the

28  employees will burn the Constitution and be verbally intimidating.

29  36. On 9 February 2024, at approximately 10:38, AM, EST, after being alone in the office

30  Defendant Darby shares with Defendant Campbell some of his opinions about the persons in

31  this case. In a nutshell, Defendant Madore's personality is characterized as a "FIRECRACKER"
3  17 of 40
4

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1  MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2  Case CIV No. TBD Document TBD Filed February 11, 2025 Page 18 of 40 Page ID #: 18

1  by Defendant Darby; moreover, he, Defendant Darby, stated the postal staff has to "DEAL

2  WITH HER [personality] EVERYDAY"; Defendant Campbell was so upset with his inability to

3  complete a sentence without getting interrupted by Defendant Madore, the number of people in

4  the room had to be lowered to two to complete the interview. Dialogues may be validated using

5  Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469 starting

6  at about 7:35 and ending at about 7:50 minutes into the recording.

7  37. Defendant Darby starting at about 10:39 AM, EST, on 9 February, 2024, shares with Defendant

8  Campbell that culture of the US Post Office at 12 Crossroads Plaza is highly dysfunctional and

9  egocentric. For example, he, Defendant Darby stated, "I'd be wrong if would have 'snapped' and

10  grabbed him [Plaintiff] and thrown him to the ground" This quote many be verified at

11  Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469 starting

12  at about 8:35 and ending at about 8:37 minutes into the recording.

13  38. On 9 February, 2024 at about 10:40 AM, EST, Defendant Campbell confirmed via Defendant

14  Darby that any member of the public can walk 360 degrees around the post office at 12

15  Crossroads Plaza. (Defendant Darby confirmed that Plaintiff could not be trespassing outside

16  the building of the post office at 12 Crossroads Plaza.) The conversation below many be

17  verified at Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-

18  09_1031_X60A35469 starting at about 9:20 and ending at about 9:46 minutes into the

19  recording.

20  ○ Defendant Campbell: "When you were loading your truck is that in that area where like the
21     public can park too?"
22  ○ Defendant Darby: "And that's the problem because we don't own the property"

1   ○  Defendant Campbell: "Yeah"
2   ○  Defendant Darby: "So basically any anybody people come through there all the time"
3   ○  Defendant Campbell: "So 360 around the building is something that anyone in the general
4      public can access?"
5   ○  Defendant Darby: "I think because ah this is this is a public building like you're saying"
6   ○  Defendant Campbell: "Yes, sir"
7   ○  Defendant Darby: "So we probably have to find, I don't know, [inaudible] upper
8      management has to do something to fix that"
9
10  The postal delivery trucks all had closed doors in the parking lot (above image), which is

11  outside of the building exterior (below image), and Defendants Madore and Darby are outside

12  the post office.

13
14  NOTE: WHPD has a copy of this video in evidence.
15
16  39. At about 10:41 AM EST on 9 February, 2024, Defendant Darby admitted he was excited the

17  morning of 9 February, 2024. The conversation below many be verified at:

18  Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469 starting

19  at about 10:41 and ending at about 11:21 minutes into the recording

20  ○  Defendant Darby: "My; my; anxiety; I go to therapy and everything; my anxiety was triggered
21     and I got defensive"
22  ○  Defendant Campbell: "And what does that mean? And like you felt internally defensive?"
23  ○  Defendant Darby: "Yes"
24  ○  Defendant Campbell: "Did you say or react in any kinda way?"
25  ○  Defendant Darby: "No; no; no; I didn't"
26  ○  Defendant Campbell: "OK"
27  ○  Defendant Darby: "I didn't"
28  ○  Defendant Campbell: "Alright"
29  ○  Defendant Darby: "Because I don't know what's going on with this guy"
30  ○  Defendant Campbell: "Do you feel that you were generally in fear due to his his actions and
31     conduct?"
32  ○  Defendant Darby: "Because I don't know him. You know anyone can feel threatened."
33  ○  Defendant Campbell: "I guess in the moment when you saw like this motion"

1    ○  Defendant Darby: "Yes, I got defensive"
2    ○  Defendant Campbell: "OK, you felt and and and can you def; can you ... "
3    ○  Defendant Darby: "So my defense ... my anxiety kicked in; so internally I'm getting enraged
4       in a sense"
5    ○  Defendant Campbell: "So you have server anxiety due to the event that happened"
6    ○  Defendant Darby: "Yes! Yes!"
7    ○  Defendant Campbell: "Alright"
8    ○  Defendant Darby:"That's why I go to therapy"
9    ○  Defendant Campbell: "Yes, sir"

11  40. At about 10:43 AM EST on 9 February, 2024, Defendants Darby and Campbell converse about

12     their mutual low opinion about the Plaintiff and how they entertain ill tidings may befall the

13     Plaintiff and how 12 Crossroads Plaza is a potential place of violence. The conversation below

14     many be verified at: Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-

15     09_1031_X60A35469 starting at about 12:50 and ending at about 13:28 minutes into the

16     recording

17   ○  Defendant Campbell: "It's all; yeah; it's pretty consistent; with with a; I think it's a look; it
18      seem; I can't say for sure; I don't want to insensate anything but it seems like it's something
19      consistent with one who like wants to get a rise out of someone in order to so that they can
20      sue."
21   ○  Defendant Darby: "Unfortunately he will get it from the wrong person one day and they
22      aren't going to care about the camera! You know what I am saying."
23   ○  Defendant Campbell: "Yeah"
24   ○  Defendant Darby: "Everybody got issues now a days"
25   ○  Defendant Campbell: "Of course. And again just because it's something that's not illegal
26      does mean .. .illegal and like doing the right thing is not.."
27   ○  Defendant Darby: "You know in here we got a lot of vets; you know that they got issues
28      from the war."
29   ○  Defendant Campbell: "mmhum"
30   ○  Defendant Darby: "They got issues from the war everything"
31   ○  Defendant Campbell: "Yes"
32   ○  Defendant Darby: "So. [inaudible; POSSIBLE THREAT BEING SUPPRESSED]"

34  41. Defendant Campbell, on behalf of the West Hartford Police Department, entered into an

1   agreement with members of the USPS at 12 Crossroads Plaza to commit the tort of negatively

2   impacting the Plaintiff's movements by getting him barred via a trespass from a federal building

3   because the Plaintiff engages in a Constitutionally protected activity; an activity that the postal

4   workers at 12 Crossroads Plaza do not like. The plan, which was coordinated with West

5   Hartford police management, was to have Plaintiff trespassed via harassing customers or staff.

6   The dialog below, which satisfies all three elements of a retaliation claim stated in *Worrell,* may

7   be corroborated by the following Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-

8   02-09_1031_X60A35469 starting at about 15:40 and ending at about 16:02 minutes into the

9   recording.

10  42. Postal workers have a meeting of the minds trying to game system and work with WHPD to

11  solicit trespass *on Constitutionally protected activities.*

12  ○ Defendant Campbell: "I don't even care about that; I've been on YouTube so many times it
13  doesn't matter anymore."
14  ○ Unknown male letter carrier (male) 3: "Let me ask you this real quick; um, I know, if if any
15  kinda grounds with any kinda grounds of trespass would be involved if he's harassing
16  people and employees"
17  ○ Defendant Campbell: "umhum"
18  ○ Unknown male letter carrier (male) 3: "or customers; would it be grounds for trespass?"
19  ○ Defendant Campbell: "Yeah"
20  ○ Unknown male letter carrier (male) 3: "from this property?"
21  ○ Defendant Campbell: "Yeah; so that's something **I am working with my supervisor to see
22  what's going on when it comes to a government-type property**." (emphasis added)
23
24  43. At about 10:47 on 9 February, 2024, Defendant Campbell while speaking with Defendants

25  Madore and Darby as well as others confirmed that any member of the public can walk around

26  the post office at 12 Crossroads Plaza. The dialog below may be corroborated by the following

27  Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469 starting

1    at about 16:55 and ending at about 17:02 minutes into the recording

2    ○ Defendant Campbell: "So this is a place ... this building ... 360 the general public can walk
3        around?"
4    ○ Defendant Madore: "Right; right"
5    ○ Defendant Campbell: "And so"

6    44. At about 10:48 on 9 February, 2024, Defendant Campbell while speaking with Defendants

7    Madore and Darby as well as others confirmed that any member of the public can record in

8    public and the USPS office at 12 Crossroads Plaza does not have a defined and/or segregated

9    area outside of the building; to state differently, the public may access the area around the post

10    office. And the dialog buttresses the WHPD and USPS employees disgust with First

11    Amendment Auditors. The dialog below may be corroborated by the following:

12    Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469 starting

13    at about 17:05 and ending at about 17:33 minutes into the recording

14    ○ Defendant Campbell: "So it's it's stressful. I'm not takin'; I'm not; I get it; I have to talk to
15        you with my the law enforcement hat"
16    ○ Defendant Madore: "Legally yes"
17    ○ Defendant Campbell: "As a person who is reasonable ... hey, that's not something ... "
18    ○ Unknown male letter carrier (male) 3: "Morally standing we agree ... NO ... but by law ...
19        he's not breaking the law"
20    ○ Defendant Madore: "Right; right"

21    45. At about 10:48 on 9 February, 2024, Defendant Campbell while speaking with Defendants

22    Madore and Darby as well as others confirmed that any member of the public can record in

23    public and USPS members threatened violence to those persons who dare record them. The

24    dialog below may be corroborated by the following

25    Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469 starting

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1    MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 23 of 40 Page ID #: 23


1    at about 17:35 and ending at about 17:52 minutes into the recording

2    ○  Defendant Campbell: "Correct"
3    ○  Defendant Madore: "Until he starts engaging. Like, remember last time ... "
4    ○  Unknown mail carrier (female) 1: "[inaudible] He did to me just now"
5    ○  Defendant Campbell: "Yes"
6    ○  Unknown mail carrier (female) 1: "What if I don't want to be recorded"
7    ○  Unknown mail carrier (male) 4: "You're in a public space"
8    ○  Defendant Campbell: "What if she; I am sorry "
9    ○  Defendant Madore: "What if she doesn't feel comfortable with him; cause she asked him
10   please stop ... cause he had the phone in her face. Like this ... can you please stop; I don't
11   feel comfortable"
12   ○  NOTE: This is not true as the video in evidence shows.
13   ○  Unknown mail carrier (male) 4: "Your allowed to be recorded; there is nothing you can do
14   about it"
15   ○  Unknown mail carrier (female) 1: **"What if I punched him?!?"**
16   ○  **All laugh**

17   46. At about 10:49 AM, EST, on 9 February, 2024, Defendant Madore admits Plaintiff was

18   threatened by one of her employees for doing a Constitutionally protected activity. The dialog

19   below may be corroborated by Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-

20   02-09_1031_X60A35469 starting at about 19:08 and ending at about 19:10 minutes into the

21   recording as Defendant Madore: states, in part,  "He [Plaintiff] had a confrontation with one of

22   our other employees"

23   47. At about 10:50:50 on 9 February, 2024, Defendant Campbell during his "meeting of the minds"

24   with Defendants Darby and Madore unequivocally stated that the WHPD has the goal to

25   remove Plaintiff's Constitutional rights as WHPD is working on overcoming the federal

26   obstacle as the the WHPD is "Trying to see [how remove First Amendment rights]; what can be

27   done regarding; some kind of like; formal like trespass warning" The dialog below may be

1   corroborated at Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-

2   09_1031_X60A35469 starting at about 20:00 and ending at about 20:07 minutes into the

3   recording.

4   48. At about 10:50:50 on 9 February, 2024, Defendant Campbell during his "meeting of the minds"

5   with Defendants Darby and Madore unequivocally, Defendant Darby stated his threat, "I was

6   ready to take him [the Plaintiff] out right there!" The dialog below may be corroborated at

7   Extraction_1_1_Extraction_1_1_Axon_Body_3_Video_2024-02-09_1031_X60A35469 starting

8   at about 20:10 and ending at about 20:19 minutes into the recording.

9   49. At about 10:57 AM EST on 9 February, 2024, Defendant Campbell meets with Sergeant Begin

10   to be advised as how to situation.

11   Note: Audio was turned off.

12   50. At about 11:00 AM EST on 9 February, 2024, Defendant Campbell meets with Defendant

13   Madore; he recaps Sergeant Begin's advise: trespass the Plaintiff using the USPS Inspectors and

14   then Defendant Campbell has a unique message: ignore the Plaintiff. The dialog below may be

15   corroborated using Axon_Body_3_Video_2024-02-09_1058_X60A35469 starting at about 3:55

16   and end at around 4:22 minutes into the recording.

17   ○ Defendant Campbell: "[in whisper] I would just recommend too that employees as difficult
18   as it is because as it is because just like anyone else if you don't give them attention and
19   don't like and if you kinda give 'em if you tell what they are trying to do they don't stick
20   around"
21   ○ Defendant Madore: "You just pretend that they are not even there"
22   ○ Defendant Campbell: "Yeah. And so like even as law enforcement people do that stuff I
23   walk right by 'em. Even with him as soon as I walked up. I said hi how you doing? Walked
24   in and thumbs up ... how's it goin'? You know like"
25   ○ Defendant Madore: "And what did he do nothing? Right?"

1    ○  Defendant Campbell: "No, he yelled at me for my badge number and I gave him my..."
2       NOTE: WHPD condoned this action and chose not reprimand officer Campbell for this
3       conspiracy
4       NOTE: Tracy Madore and at least three others denied government services 6 days later
5
6    51. At about 11:00 AM EST on 9 February, 2024, Defendant Campbell meets with Defendant

7    Madore. Defendant Campbell instructs Defendant Madore to share with her people to ignore the

8    Plaintiff. The dialog below may be corroborated by viewing Axon_Body_3_Video_2024-02-

9    09_1058_X60A35469 starting at about 4:56 and end at around 4:59 minutes into the recording.

10   ○  Defendant Campbell: "But, if, I would just tell everyone else just ignore him."
11   ○  Defendant Madore: "Right"
12
13   52. At about 11:02 AM EST on 9 February, 2024, Defendant Campbell meets with Defendant

14   Madore. Defendant Campbell instructs Defendant Madore to share with her people to ignore the

15   Plaintiff. Then an unknown woman approaches Defendants Campbell and Madore and asks if it

16   would be authorized to punch the defendant. The dialog below may be corroborated by viewing

17   Axon_Body_3_Video_2024-02-09_1058_X60A35469 starting at about 5:15 and end at around

18   5:21 minutes into the recording.

19   ○  Unknown Female: "If, by accident, somebody flips over and we punch him or do something
20      to him; we get arrested right?"
21   ○  Defendant Campbell: "Yeah, I recommend not punching some one."
22
23   53. On 15 February 2024, at approximately 11:06 AM EST, Rachel Groves called 9-1-1 and said

24   "He's standing on the counter" which may be found on the wav file,

25   4_911_POS_1_2024_02_15_11_06_55_by_Start_Time_asc.wav, at time mark 14.

26   54. On 15 February 2024, at approximately 11:07 AM EST, WHPD dispatch said "Mark is standing

27   on the counter now"; this quote may be found on
3                                    25 of 40
4                    **MOTION TO CLARIFY AND CORRECT THE RECORD**

05_PD_Dispatch_2024_02_15_11_07_12_by_Start_Time_asc.wav about 5 seconds into the wave file.

55. Officer Wallace at approximately 11:18 AM, EST, asked, Defendant Santiago, Billy, and Rachel, "Was he [the Plaintiff] standing on the counter at all?" This statement may be corroborated at 7:45 to 7:46 minutes into the file of recording

_Extraction_1_1_Extraction_1_1_Axon_Body_3_ Video_2024-02-15_1109 X60A3384C

56. Rachel, then answers Officer Wallace's or Sergeant Begin's question, "Was he up on the counter at all?" with "I wasn't out here"; this response may be corroborated at 7:46 to 7:47 minutes into the file of recording _Extraction_ 1 _1_Extraction_1_1_ Axon Body 3 _ Video_2024-02-15 1109 X60A3384C (Wallace) and may be cross referenced starting about 6:47 to 6:49 minutes into the file of_ Extraction_ 1 _ 1 _ Extraction_ 1 _ 1 _ Axon Body_ 3 _Video_ 2024-02-15_1110_X60A32469 (Begin). Rachel's response directly contradicts part of her 9-1-1 call in which she said "He's standing on the counter" which may be found on the wav file, 4_911_POS_1_2024_02_15_11_06_55_by_Start_Time_asc.wav, at time mark 0:14.

57. Officer Wallace or Sergeant Begin re-asks the standing on the counter question, asking for a second time, "Was he [the Plaintiff] standing on the counter at all?" This question may be corroborated at 8 :02 to 8 :04 minutes into the file of recording

_Extraction_1_1_Extraction_1_1_Axon_Body 3_ Video_2024-02-15_1109 X60A3384C

58. Defendant Santiago frantically states, "Yes! He don't move from here!" This question may be corroborated at 8:03 to 8:04 minutes into the file of recording_

Extraction_1_1_Extraction_1_1_Axon_Body 3 _ Video_2024-02-l 5 _1109 X60A3384C;

**UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)**
1    **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 27 of 40 Page ID #:  27

1    Defendant Santiago's affirmation may be cross-referenced at about 7:05 to 7:07 minutes in the

2    file of recording _Extraction_ 1 _ 1 _ Extraction_ 1 _ 1 _Axon_ Body_ 3 _Video_ 2024-

3    0215_1110_X60A32469 (Sergeant Begin's body camera.)

4    Note: At no time, do any of the witnesses nor their statements state anything to the affect of "Of

5    note, it was later determined that the complaint stated Mark [the Plaintiff] was 'banging on the

6    counter' and this was misunderstood as it was relayed to dispatch."

7    59. Per ECF# 88 page 35, paragraph 126, lines 12 to 16:

8    Per provided documentation USPS personnel were provided litigation
9    hold letters on February 10, 2024 and February 22, 2024 and various
10   other correspondence but no video/audios of the events were provided nor
11   were sanctions imposed. On March 29, 2024, Plaintiff received
12   correspondence from the Office of Counsel United States Office Of
13   Inspector Services refusing to provide the Plaintiff any of the requested
14   material.

15   60. On February 10, 2024, Defendant Madore received a litigation hold letters.

16   61. On 15 February 2024, Defendant Santiago stated "This camera is recording you."

17   NOTE: Defendant Santiago's right hand is pointing to a camera in the left most still. It may be

18   found on the right size about a third of the way down going from top to bottom.

19   Defendant Santiago also states "I am not going to take you! Go over there."

20   This video was provided to USPS officials (Louis DeJoy, 75th Post Master General for the

21   United States of America, Lisa F. King, Manager Human Resources for USPS, K. E. Dallas,

22   USPIS, and Todd Holm, Postmaster of Hartford, CT) via an email sent on Monday, March 25,

23   2024 4:05:08 PM EST. The email contained an attachment, a video clip is entitled,

24   I_am_not_going_to_take_you.mp4. This email was read by by Lisa F. King on Monday, March

25   25, 2024 4:06:08 PM (UTC-05:00) Eastern Time (US & Canada). This video clip was also

1 provided to WHPD.

2 62. On 15 February 2024, at approximately 11:16 AM EST, Billy stated "We don't want him here."

3 This statement may be corroborated at 5 :44 to 5 :45 minutes into the file of recording

4 _Extraction_1_1_Extraction_ 1_1_Axon_Body 3 _ Video_2024-02-15 _1109 X60A3384C.

5 63. Per Officer Kevin Kaselouskas' body camera at about 11: 19:38 AM EST on 15 February 2024

6 the following conversation been the Plaintiff and Sergeant Begin was recorded.

7  Plaintiff: "Am I being detained?"
8  Sergeant Begin: "Yes for now"
9  Plaintiff: "For what crime?"
10  Sergeant Begin: "We'll get into that; we will get into that. But right now
11  you are being detained."
12  Plaintiff: "For what crime?"
13  Sergeant Begin: "For Breach of Peace; multiple people called and saying that there is
14  someone who is l[o]ud, banging on the counter, refusing to leave; telling people he's
15  allowed to record who ever he wants. I don't know if that's the exact words you used but
16  that's what was relayed to me."
17
18 64. On 15 February 2024, at approximately 11:28 :32 AM, EST, non-jurisdictional misdemeanor

19 arrest for Breach of Peace, 2nd Degree, which may be corroborated at:

20 • _Extraction_1_1_Extraction_1_1_Axon_Body 3_ Video_2024-02-15_1108_X60A35559 at
21 about 20:31 into the recording,
22 • _Extraction_1_1_Extraction_1_1_Axon_Body_3_ Video_2024-02-15_1125_X60A3226D at
23 about 3:42 into the recording,
24 • _Extraction_1_1_Extraction_1_1_Axon_Body 3_ Video_2024-02-15 _1127 X60A3384C at
25 about 2:27 into the recording, and/or
26 • _Extraction_1_1_Extraction_1_1_Axon_Body_ 3 _Video_ 2024-02-15 1127 X60A32469 at
27 about 2 12 into the recording
28

29 The arrest was made nea a visitor entrance, an access controlled entrance, emergency egress

30 only, and Post Office box areas.

31 65. On Monday, April 1, 2024 at 12:16:47 PM. EST USPS sent plaintiff an email with an

1    attachment. The email, which contained a subject of "Acknowledgment of FOIA Request

2    No. 2024-FPIS-00331", contained the following text:

3        Mr. Wozar,
4
5        Please see the attached correspondence concerning your Freedom of
6        Information Act request dated March 29, 2024 and assigned FOIA Case
7        Number 2024-FPIS-00331.
8
9        Should you have any questions, please contact the FOIA Hotline at 202-
10       268-7004 or by email at foia@uspis.gov
11
12       Thank you,
13       U.S. Postal Inspection Service
14       Freedom of Information Act (FOIA) Unit
15
16   The attachment of the email contained, in part:

17       This is in reference to your letter dated March 8, 2024, and referred from
18       the Privacy and
19       Records management Office, requesting, pursuant to the Freedom of
20       Information Act, access
21       to certain records that may be in the custody of the U.S. Postal Inspection
22       Service regarding:
23       1. All emails that relate to incidents described in media, dates, times and
24       location below
25       2. Transcripts of telephone calls that relate to incidents described in
26       media, dates, times and location below
27       3. Personal cell phone videos from your staff's cell phones that were taken
28       previously and in accordance with previously filed litigation hold letters ◦
29       Teresa Santiago ◦ Mark Darby◦ Jackie? family name unknown but image
30       in previous submissions
31       4. Disciplinary and pay records for ◦ Teresa Santiago ◦ Gladys family
32       name unknown but image and voice shown in previous submissions ◦
33       Jackie? family name unknown but image in previous submissions ◦ Todd
34       Holm ◦ Rachel Groves ◦ Tracy Madone ◦Abdius Bilial ◦ Tyneese Selby ◦
35       Mark Darcy
36       5. All statements related to this incident (to include all statements made
37       by but not restricted to: **Teresa Santiago, Rachel Groves, Tracy**
38       **Madone, Abdius Bilial, MarkDarcy, and Tyneese Selby** to any
39       investigative body, to include but not restricted to USPS OIG, internal,
3                                29 of 40
4                    MOTION TO CLARIFY AND CORRECT THE RECORD

1    and/or West Hartford Police (WHPD)).
2    6. The investigations for the following closed reports ∘ 61397092 ∘
3    61396456 ∘61396095 ∘ 61396566 ∘ 61396665 ∘ 61396737 ∘ 61396804 ∘
4    61396916 ∘ 61397247
5    7. Please also provide all camera for 12 Crossroads Street West Hartford
6    C [stet] as the
7    WHPD directed employees to ignore me
8    Pleas [stet] be advise that we will only be responding to items #5 and#7
9    of your request
10
11    NOTE: Nothing is mentioned about the emails and video footage.

12    66. On Friday, April 5, 2024 10:11 AM PM. EST USPS sent plaintiff an email with an attachment. The

13    email, which contained a subject of "Acknowledgment of FOIA Request No. 2024-FPIS-

14    00331", contained the following text:

15    Mr. Wozar,

16    Please see the attached copy of the final response letter for FOIA Request
17    No. 2024-FPIS-00331.
18
19    Should you have any questions, please contact the FOIA Hotline at 202-
20    268-7004 or by email at foia@uspis.gov.
21    Thank you.
22
23    U.S. Postal Inspection Service
24    Freedom of Information Act (FOIA) Unit
25
26    The attachment of the email contained, in part:

27    Dear Mr. Wozar:
28
29    This is in further reference to your letter dated March 29, 2024,
30    requesting, pursuant to the Freedom of Information Act, access to certain
31    records that may be in the custody of the U.S. Postal Inspection Service
32    regarding:
33
34    • All statements related to this incident (to include all statements made by
35    but not restricted to: **Teresa Santiago, Rachel Groves, Tracy Madone,**

1    **Abdius Bilial, Mark Darcy, and Tyneese Selby** to any investigative
2    body, to include but not restricted to USPS OIG, internal, and/or West
3    Hartford Police (WHPD)). (emphasis in original)
4
5    • Please also provide all camera for 12 Crossroads Street West Hartford C
6    [stet] as the WHPD directed employees to ignore me
7
8    In regards to your request, a search was conducted of the Postal
9    Inspection Service records at National Headquarters, as well as those
10   records at the Boston Division, the field element whose jurisdiction
11   includes the state of Connecticut. You are advised that the Postal
12   Inspection Service has no records or video footage concerning the subject
13   of your queries.
14
15   NOTE: Nothing is mentioned about the existence of emails and video

16   footage.

17   NOTE: Nothing mentioned about the emails.

18   67. On Monday, November 25, 2024 11:34 AM EST USPS sent plaintiff an email. The email,

19   which contained a subject of "Acknowledgment of FOIA Request No. 2024-FPIS-00331",

20   contained the following text:

21   Good morning,

22
23   Please be advised that the FOIA guidelines are not subjected to the rules[3]
24   stated below.
25
26   Thank you,
27   USPIS FOA Unit
28
29   68. On Tuesday, December 17, 2024 10:49 AM EST USPS sent plaintiff an email. The email, which

---

3  The rules listed were to certify electronic evidence. Text read "Please certify this thread In accordance with Federal
   Rules of Evidence 902(13) and 902(14), which became effective on December 1, 2017, provide for the self-
   authentication of electronic evidence. Under these rules, electronic evidence can be authenticated by certification instead
   of by testimony. Rule 902(13) applies to electronic evidence such as computer files, social media posts, and smart device
   data. Rule 902(14) applies to electronic copies."

1    contained a subject of "Acknowledgment of FOIA Request No. 2024-FPIS-00331", contained

2    the following text:

3        Good morning,

4        We are unable to provide you with an update. As stated in our letter dated
5        March 29, 2024. your inquiry involves a third party, we have the
6        responsibility of ensuring there is no unwarranted invasion of personal
7        privacy.  Therefore, in order for us to process your request, it will be
8        necessary for you to furnish this department a written statement
9        from **Teresa Santiago, Tracy Madone, MarkDarcy, and Tyneese**
10       **Selby** authorizing the release to you of any **information** the Postal
11       Inspection Service may have in its possession regarding them.
12
13       In the absence of the requested authorization, any **information** which may
14       be found in our files regarding **Teresa Santiago,  Tracy Madone,**
15       **MarkDarcy, and Tyneese Selby** would be exempt from disclosure
16       pursuant to title 5, United States Code, section 552(b)(6), where release of
17       personnel and similar files would constitute a clearly unwarranted
18       invasion of personal privacy; and section 552(b)(7)(C), where disclosure
19       could reasonably be expected to constitute an unwarranted invasion of
20       personal privacy.
21
22       Once you provide us authorization from the names listed you may submit
23       another FOIA request.
24
25       Thank you,
26       USPIS FOIA Unit
27
28       NOTE: Nothing is mentioned about the emails and video footage except

29       wanting to avoid an "unwarranted invasion of personal privacy".

30                              **ARGUMENT/DISCUSSION**

31    69. Using the 3 *Fujitsu* 's preservation criteria  relevant to future litigation

32        (1) that the party having control over the evidence had an obligation to
33        preserve it at the time it was destroyed;

34        (2) that the records were destroyed with a `culpable state of mind' and
4                   **MOTION TO CLARIFY AND CORRECT THE RECORD**

1          (3) that the destroyed evidence was `relevant' to the party's claim or
2          defense such that a reasonable trier of fact could find that it would support
3          that claim or defense

4   as a template for the sanctions discussion, each criterion will be analyzed.

5  **Party having control over the evidence had an obligation to preserve it**

6  70. As per USPS ASM, the following locations are to be recorded via CCTV "parking lots, building

7  exteriors, employee and visitor entrances, other access controlled entrances, emergency egress

8  only, [and/or] Post Office box areas", and since plaintiff has evidence that events, that were

9  accused as criminal against the plaintiff and plaintiff contends criminal activity against the

10  defendants and since ASM "a crime occur[ed] in the monitored area, to record evidence of it" as

11  "The Postal Service uses CCTV systems for the protection" and since "CCTV systems do not

12  utilize "dummy" or nonfunctioning CCTV cameras", and since the SCO maintains" a minimum

13  of the most recent 32 days of video recording tapes or disks. The SCO also assures that the

14  information from the CCTV camera is monitored and/or properly recorded 24 hours a day", and

15  since WHPD spoke with Defendant Madore about the functioning records, the evidence should

16  be available to His Honor and all criminal trails both for the plaintiff and the defendants. As at

17  least four camera locations: parking lot/building exterior, other access controlled entrances,

18  emergency egress only, postal store [and/or] Post Office box areas across multiple days to

19  include, but not restricted to 19 January, 9 and 15 February, 2024 should available, making the

20  availability for at least 12 videos. Examples include, but are not restricted to:

21    ○  On January 19, 2024, Officer Bowsky heard Defendant Selby confess that he wanted to
22       plaintiff to delete evidence on January 19, 2024.
23    ○  On January 19, 2024, interaction between officer Bowsky and Santiago at the counter

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1  MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD
2  Case CIV No. TBD Document TBD Filed February 11, 2025 Page 34 of 40 Page ID #:  34

1  ○ On January 19, 2024, interaction between plaintiff and Defendant Swank and others in the
2     post office box area
3  ○ On January 19, 2024, interaction between plaintiff and defendant Santiago at the counter
4  ○ On January 19, 2024, interaction between Sergeant Caless and Defendant Swank in post
5     office entrance and parking lot
6  ○ On February 9, 2024, interaction in post office parking lot as the interaction with the postal
7     employees, possibly the manager from Newington...mentioned by Defendant Madore
8  ○ On 9 February, 2024, Defendants Madore and Darby threatened plaintiff in the parking lot.
9  ○ On 9 February, 2024, Defendant Darby threatened plaintiff in the Post Office box area,
10  ○ On 9 February, 2024, Defendant Campbell entering the post office via the front door
11  ○ On 9 February, 2024, Officer Dickman speaking with Defendant Darby in the parking lot
12  ○ On 9 February, 2024, Defendant Campbell meeting with Sergeant Begin from about 10:57
13     AM to about 11:00 AM in the parking lot
14  ○ On 9 February, 2024, Defendant Campbell facilitating the meeting with postal workers in
15     the work area
16  ○ On 9 February, 2024, Defendant Campbell investigating the work area
17  ○ On 9 February,2024, Officer Dickman investigating in the work area
18  ○ On 10 February, 2024, Defendant Madore receiving the litigation gold letter at the counter
19  ○ On 15 February, 2024, Defendant Santiago stated "This camera is recording you." The
20     camera to which Defendant Santiago points is in the postal retail store.
21  ○ On 15 February, 2024, Officer Wallace interviewing the Teresa Santiago and others in the
22     postal retail store
23  ○ On 15 February, 2024, Officer Wallace interviewing the Teresa Santiago and others in the
24     work area
25  ○ On 15 February, 2024, Sergeant Begin interviewing Billy others in the postal retail store
26  ○ On 15 February, 2024, WHPD arrested plaintiff in the Post Office box area.
27  ○ On 15 February, 2024, Officer Wallace meeting with "I wasn't there girl", Rachel??, in the
28     postal retail store
29  ○ On 12 May, 2024??, parking lot, when Defendant Darby said, "Run his a** over"
30
31  **Records were destroyed with a "culpable state of mind"**

32  71. Since the "duty to preserve evidence 'arises when the party has notice that the evidence is

33      relevant to litigation or when a party should have known that the evidence may be relevant to

34      future litigation.'" (*Zubulake v. UBS Warburg LLC ("Zubulake IV")*, 220 F.R.D. 212,

35      216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir.

1    2001))), was demonstrated by, and not excluded to:

2    Duty to preserve evidence:

3    ○  USPS receiving litigation hold letters

4         ▪ Delivered to Defendant Shelby and Madore on 10 February, 2024
5         ▪ Delivered to Defendant Madore on 15 February, 2024
6         ▪ Delivered to Todd Holm on 27 February, 2024
7         ▪ Defendant Madore's 15 February 2024, at approximately 11:42 AM, EST, admission "So
8            they [the post office clerks] said he [the Plaintiff] wanted to speak to Plaintiff and I
9            said...this was last week...and I said,'Alright, can I help you?' And he's videotaping
10           Plaintiff and he goes...he handed it [the litigation hold letter] OK and he goes I want the
11           footage from your phone and looked over, right, I got the camera apparently this is
12           me...you can see I am just walking, right.
13
14   ○  Defendant Madore's statements, to include, but not restricted to

15        ▪ On 9 February 2024, at approximately 10:29, AM, EST, Defendant Madore called the
16           West Hartford 9-1-1 call line, as memorialized from about 43 seconds to about 46
17           seconds into the wave file
18           0_911_POS_1_2024_02_09_10_24_28_by_Start_Time_desc.wav. She stated, in part,
19           "He [the Plaintiff] said he got a lawyer. He's trying to su...make a big deal."
20        ▪ On 9 February 2024, at approximately 10:31, AM, EST, Defendants Campbell, Madore,
21           and Darby, began their "meeting of the minds"; during this meeting which may be cross-
22           referenced on (Extraction_l. l)_Axon_Body_3_ Video_2024-02-15 _ 113 _X60A33 84C
23           body camera file Defendant Madore stated plaintiff will "sue".
24
25   Culpable state of mind

26   ○  Defendant Madore conveyed to WHPD via Defendant Campbell about USPIS instructing

27       her not "I'm not allowed to give anything anyway; even if I wanted" on 15 February 2024,

28       at approximately 11 :42 AM, EST via this dialog with Officer Wallace:

29   ○  Defendant Madore conveyed to WHPD via Defendant Campbell about USPIS instructing

30       her not "**I'm not giving you anything!** I said" (emphasis in original) on 15 February 2024,

31       at approximately 11:42 AM, EST via this dialog with Officer Wallace.

**UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)**
1  **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2  Case CIV No. TBD Document TBD Filed February 11, 2025 Page 36 of 40 Page ID #: 36

1  ○  Defendant Selby's state of mind is shown in his command:

2  ■  Defendant Selby: "Don't videotape my employee again please"
3  Defendant Selby: "You have to understand this is a federal building; you can't come in
4  and video tape employees" Defendant Selby: "Can you delete that right now? Delete it
5  right now. Take out your phone and delete it right now."
6
7  Defendant Selby's state of mind clear runs afoul of *Dyer* as it includes, in part:
8
9  the brevity of the First Amendment discussion" in many "circuit court
10  opinions that have recognized a right to film government officials or
11  matters of public interest in public space' as evidence of 'the fundamental
12  and virtually self-evident nature of the First Amendment's protections in
13  this area'); *see also Sorrell v. IMS Health Inc*., 564 U.S. 552, 568 (2011)

14  *Dyer v. Smith*, Civil Action No. 3:19-cv-921, 15 (E.D. Va. Feb. 23, 2021)

15  •  USPS's state-of-mind clearly is culpable. Per their April 1, 2024 response which reads in

16  part, "Pleas [stet] be advise that we will only be responding to items #5 and#7 of your

17  request." and then continues, in the 17 December, 2024 email that reads, when talking

18  about not releasing videos taking in public spaces, in part, "[S]ection 552(b)(7)(C),

19  where disclosure could reasonably be expected to constitute an unwarranted invasion of

20  personal privacy." This statement, like that of Defendant Selby, is contradicted by

21  precedents and federal law and must be clarified through an order from this Honorable

22  Court as they, the USPS FOIA office, are improperly withholding videos.

23  •  USPS state of mind is culpable as multiple people falsely reported that plaintiff was "on

24  the counter" and then recanted when questioned by WHPD; video would expose lies.

25  Additionally, the video would also show another lie – racial remarks. Both events would

26  have occurred in the retail center that is covered by a CCTV camera.

1   **Destroyed evidence was "relevant" to the party's claim or defense**

2   72. The at least 12 videos would be "relevant" not only to civil case at the bar as it would 1) show

3   planning of the conspiracy, 2) execution the conspiracy, 3) corroborate audio/video files already

4   digitally certified, 4) provide exculpatory evidence and/or context for plaintiff's current

5   (second) criminal case, H14C-CR24-0190876-S, which is currently in *Nolle prosequi* status as

6   defendants may re-open it, and/or 5) may provide Attorney General more insight for their

7   investigation/prosecution of the defendants.

8                                              **REQUESTS**

9   73. The passages that reference antiquated CFR be ordered to be removed for the record and struck.

10  74. USPS provide complaint status against the federal employees in accordance with law.

11  75. If USPS provides CCTV videos/documents, the exempt action, then this Honorable Court

12  review all newly supplied evidence de novo in accordance with 5 U.S. Code § 552(a)(4)(B) to

13  verify its exemption-ability and then provide them to plaintiff.

14  76. If USPS cannot produce the CCTV video of plaintiff on the counter, then plaintiff requests in

15  the interest of justice a 28 USC § 535 investigation opened for false reporting.

16  77. If USPS cannot produce the CCTV video of plaintiff making racial remarks then plaintiff

17  requests in the interest of justice a 28 USC § 535 investigation opened for false reporting.

18  78. If USPS does not produce records, then Plaintiff, Mark Wozar, ask this Honorable Court

19  requests to compel the USPS to produce and provide requested all "records improperly withheld

20  from...[the] complainant" and/or FOIA requests to the plaintiff within 7 days from his Honor's

21  ruling in accordance with 5 U.S. Code § 552a - Records maintained on individuals section (b)

UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)
1 **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2 Case CIV No. TBD Document TBD Filed February 11, 2025 Page 38 of 40 Page ID #:  38

1 that begins:

2 No agency shall disclose any record which is contained in a system of
3 records by any means of communication to any person, or to
4 another agency, except pursuant to a written request by, or with the prior
5 written consent of, the individual to whom the record pertains, unless
6 disclosure of the record would be—
7
8 (12) and that continues in part: "pursuant to the order of a court of competent jurisdiction".

9 79. This Honorable Court provide all records, to include, but not restricted to all videos and records

10 public records produced by this motion and all certified evidence to date from this matter, to the

11 Attorney General so that may more complete investigation in regards to under 28 U.S.C. § 535,

12 ECF #142, **Motion to Compel (answers to criminal allegations for schedule)**. If the records

13 are not provided, then Plaintiff, in accordance with 44 U.S.C. § 3106 as per 44 U.S.C. § 3101,

14 which states in part:

15 The head of each Federal agency shall make and preserve records
16 containing adequate and proper documentation of the organization,
17 functions, policies, decisions, procedures, and essential transactions of the
18 agency and designed to furnish the information necessary to protect the
19 legal and financial rights of the Government and of persons directly
20 affected by the agency's activities.
21

22 80. Any other relief that this Court deems is just and fair;

**UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)**
1    **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 39 of 40 Page ID #:  39

1    81. Declaratory judgment relief establishing the Defendants' above-described conduct violated

2    Plaintiff rights as they did not preserve evidence; this judgment will be provided to the

3    Connecticut State Prosecutors' Office in reference to case H14C-CR24-0190876-S.

4                               Respectfully submitted,

5
6
7
8                               Mark Wozar
9                               Pro se/proper person
10                              1250 Farmington Ave A17,
11                              West Hartford, CT 06107
12                              T: (312) 692-9335
13                              mwozar@hotmail.com

**UNITED STATES FEDERAL APPEALS COURT (SECOND CIRCUIT)**
1    **MOTION TO PRESERVE EVIDENCE, CLARIFY, AND CORRECT THE RECORD**
2    Case CIV No. TBD Document TBD Filed February 11, 2025 Page 40 of 40 Page ID #:  40

1                                 **CERTIFICATION**

2       I hereby certify that on February 11 2025, a copy of the foregoing was filed electronically and

3    served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail

4    to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept

5    electronic filing. Parties may access this filing through the Court's system.

6    Counsel for Defendants Madore, Darby, Santiago, and Selby
7    **Eric Benjamin Miller**
8    U. S. Attorney's Office-CT
9    157 Church Street
10   24th Floor
11   New Haven, CT 06519
12   203-821-3700
13   Fax: 203-773-5373
14   Email: eric.miller@usdoj.gov
15
16   Counsel for Defendants Campbell, Swank, West Hartford Police Department, and Town of West
17   Hartford
18   **James Newhall Tallberg**
19   Karsten & Tallberg LLC
20   500 Enterprise Drive, Suite 4B
21   Rocky Hill, CT 06067
22   860-233-5600
23   Fax: 860-233-5800
24   Email: jtallberg@kt-lawfirm.com
25
26                                              Respectfully submitted,

27
28
29
30                                              Mark Wozar
31                                              Pro se/proper person
32                                              1250 Farmington Ave A17
33                                              West Hartford, CT 06107
34                                              T: (312) 692-9335
35                                              mwozar@hotmail.com
36